UNITED STATES, Appellee

v.

Josh R. HARCROW, Lance Corporal
U.S. Marine Corps, Appellant

No. 07-0135

Crim. App. No. 200401923

United States Court of Appeals for the Armed Forces

Argued November 6, 2007

Decided March 13, 2008

ERDMANN, J., delivered the opinion of the Court, in which BAKER, J., joined. RYAN, J., filed a separate concurring opinion. STUCKY, J., filed a separate opinion concurring in the result, in which EFFRON, C.J., joined.

<u>Counsel</u>

For Appellant: Major Brian L. Jackson, USMC (argued); Major Jeffrey S. Stephens, USMC (on brief).

For Appellee: Captain James W. Weirick, USMC (argued); Major Brian K. Keller, USMC, and Captain Roger E. Mattioli, USMC (on brief); Commander Paul C. LeBlanc, JAGC, USN, and Lieutenant Jessica M. Hudson, JAGC, USN.


Military Judges: E. W. Loughran and Leslie K. Burnette


<u>**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**</u>

Judge ERDMANN delivered the opinion of the Court.

After entering mixed pleas, Lance Corporal Harcrow was convicted of numerous drug related offenses, failing to obey a lawful order, escaping custody, and unauthorized absence. He was sentenced to confinement for six years, reduction to E-1, and a bad-conduct discharge. The convening authority approved the sentence and suspended all unexecuted confinement for a period of twelve months from the date of his action.

On appeal, the United States Navy-Marine Corps Court of Criminal Appeals dismissed the disobedience charge and one of the drug specifications but affirmed the remainder of the findings and the sentence. United States v. Harcrow, No. NMCCA 200401923, 2006 CCA LEXIS 285, at *26-*27, 2006 WL 4572853, at *9-*10 (N-M. Ct. Crim. App. Oct. 30, 2006) (unpublished).

In the course of its review, the Court of Criminal Appeals considered whether the military judge erred in admitting two laboratory reports prepared by the Virginia Division of Forensic Science. Harcrow, 2006 CCA LEXIS 285, at *15-*18, 2006 WL 4572853, at *5-*6. The laboratory reports reflected the presence of heroin and cocaine residue on items seized from Harcrow's residence. Harcrow argued, inter alia, that the laboratory reports constituted testimonial hearsay under Crawford v. Washington, 541 U.S. 36 (2004), and their admission violated his Sixth Amendment right to confrontation. Harcrow,

2

2006 CCA LEXIS 285, at *16, 2006 WL 4572853, at *5.  The lower
court found that the reports were nontestimonial hearsay and
admissible under Military Rule of Evidence (M.R.E.) 803(6) as
business records.  Harcrow, 2006 CCA LEXIS 285, at *17, 2006 WL
4572853, at *6.

We granted review of this case to consider whether the
lower court erred by finding that the state forensic laboratory
reports were nontestimonial hearsay under Crawford.  65 M.J. 284
(C.A.A.F. 2007).  We hold that the laboratory reports in this
case were testimonial evidence.  Applying a plain error
analysis, we conclude that the error was plain and obvious but
the admission of this evidence was harmless beyond a reasonable
doubt and therefore did not violate a substantial right.  See
Article 59(a), Uniform Code of Military Justice (UCMJ), 10
U.S.C. § 859(a) (2000); United States v. Brewster, 61 M.J. 425,
432 (C.A.A.F. 2005).  Accordingly, we affirm the findings of
guilty and the sentence as set out in the decision of the Court
of Criminal Appeals.

## BACKGROUND

Harcrow was suspected of manufacturing methamphetamine at
his residence and was arrested by the Naval Criminal
Investigative Service in 2001.  He was ordered into pretrial
confinement in February 2002, but escaped while being escorted
to the brig.  On March 2, 2002, deputies from the Stafford

3

County Sheriff's office in Virginia arrested Harcrow at his home for desertion and other unrelated state charges. At the time of his arrest, sheriff's deputies seized drug paraphernalia from Harcrow's residence. The seized items were sent to the Virginia Division of Forensic Science for analysis. That Division issued two laboratory reports documenting the presence of cocaine and heroin on several of these items.

At a general court-martial composed of a military judge sitting alone, Harcrow entered mixed pleas to numerous drug-related and other charges. Relevant to this appeal are the specifications contained in Additional Charge II which arose from the items seized in the search of Harcrow's house during his arrest and the subsequent laboratory reports. Contrary to his pleas, Harcrow was found guilty of three of these specifications: wrongful possession of cocaine, wrongful possession of heroin, and wrongful use of cocaine. On appeal, the Court of Criminal Appeals held that the specification for wrongful possession of cocaine was multiplicious for findings with wrongful use of cocaine. Harcrow, 2006 CCA LEXIS 285, at *3-*4, 2006 WL 4572853, at *1. The lower court dismissed the specification for wrongful possession of cocaine and affirmed the findings of guilty as to wrongful use of cocaine and wrongful possession of heroin. Harcrow, 2006 CCA LEXIS 285, at

*3-*4, *26, 2006 WL 4572853, at *1, *9.  This appeal involves only these two specifications.

At trial, the prosecution offered both laboratory reports into evidence during the testimony of an arresting officer. With respect to the first report the military judge asked the defense, "Have you seen this?"  Defense counsel replied, "I have no objections, your Honor."  In response to the proposed admission of the second laboratory report, defense counsel again stated, "No objections, your Honor."  Both laboratory reports were admitted into evidence.

Before the Court of Criminal Appeals, Harcrow argued that the laboratory reports were testimonial hearsay under Crawford, which was issued by the Supreme Court after the court-martial concluded and while the case was pending on direct review. Citing this court's decision in United States v. Magyari, 63 M.J. 123, 125 (C.A.A.F. 2006), the lower court concluded that the laboratory reports were nontestimonial and admissible under the business records hearsay exception, M.R.E. 803(6).  Harcrow, 2006 CCA LEXIS 285, at *17, 2006 WL 4572853, at *6.  We granted review of this issue.

## WAIVER

The facts surrounding admission of the laboratory reports raise a threshold issue as to whether Harcrow waived the opportunity to argue on appeal that the laboratory reports

5

constituted testimonial evidence under Crawford, or merely

forfeited the issue making this appeal a matter for plain error

review under M.R.E. 103(d).  See United States v. Olano, 507

U.S. 725, 733-34 (1993) (noting that waiver, unlike forfeiture,

extinguishes error).[1]

The Supreme Court has addressed the difference between

waiver and forfeiture under Fed. R. Crim. P. 52(b) on which

M.R.E. 103(d) is partially based:

> The first limitation on appellate authority under
> Rule 52(b) is that there indeed be an "error."
> Deviation from a legal rule is "error" unless the rule
> has been waived. . . .
>
> Waiver is different from forfeiture.  Whereas
> forfeiture is the failure to make the timely assertion
> of a right, waiver is the "intentional relinquishment
> or abandonment of a known right."  Johnson v. Zerbst,
> 304 U.S. 458, 464 (1938).  Whether a particular right
> is waivable; whether the defendant must participate
> personally in the waiver; whether certain procedures
> are required for waiver; and whether the defendant's
> choice must be particularly informed or voluntary, all
> depend on the right at stake.  Mere forfeiture, as
> opposed to waiver, does not extinguish an "error"
> under Rule 52(b).

Olano, 507 U.S. at 732-33 (citations omitted); see also United

States v. Powell, 49 M.J. 460, 462-63 (C.A.A.F. 1998)

---

[1] This court's cases have frequently addressed "waiver" but
rarely in the context of extinguishing error and depriving the
court of an opportunity for review.  Rather, this court more
often addresses "waiver" in the context of plain error review.
See, e.g., Rule for Court-Martial (R.C.M.) 920(f).  As addressed
below, under the terminology used by the Supreme Court in Olano,
this more lenient version of waiver is labeled "forfeiture" and
it is the Olano terminology that we are using here.

(discussing the relationship between Fed. R. Crim. P. 52(b) and M.R.E. 103(d)); 1 Steven A. Saltzburg et al., Military Rules of Evidence Manual § 103.02[7][c], at 1-37, 1-38 (6th ed. 2006) (discussing the interplay of waiver, forfeiture and plain error in military law and quoting Olano, 507 U.S. at 733-34).

In this case, the right at stake is the Sixth Amendment right to confrontation. In addressing waiver of constitutional rights, the Supreme Court long ago emphasized the same definition of waiver quoted above from Olano, stating that there is "a presumption against the waiver of constitutional rights, see, e.g., Glasser v. United States, 315 U.S. 60, 70-71, and for a waiver to be effective it must be clearly established that there was 'an intentional relinquishment or abandonment of a known right or privilege.'" Brookhart v. Janis, 384 U.S. 1, 4 (1966) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)). Yet the Supreme Court has also acknowledged that "counsel may, under some conditions, where the circumstances are not 'exceptional, preclude the accused from asserting constitutional claims.'" Id. at 7 (quoting Henry v. Mississippi, 379 U.S. 443, 451 (1965)). That is to say, in certain circumstances, defense counsel may waive constitutional rights on behalf of their clients.

In this context, a number of United States Circuit Courts of Appeal have considered whether defense counsel may waive a

client's Sixth Amendment right of confrontation by stipulating to the admission of evidence. Several circuits have held that counsel may do so "so long as the defendant does not dissent from his attorney's decision, and so long as it can be said that the attorney's decision was a legitimate trial tactic or part of a prudent trial strategy." United States v. Cooper, 243 F.3d 411, 418 (7th Cir. 2001) (citation and quotation marks omitted); Hawkins v. Hannigan, 185 F.3d 1146, 1155 (10th Cir. 1999); United States v. Stephens, 609 F.2d 230, 232-33 (5th Cir. 1980); see also United States v. Plitman, 194 F.3d 59, 64 (2d Cir. 1999) (holding that "counsel may waive a defendant's Sixth Amendment right to confrontation where the decision is one of trial tactics or strategy that might be considered sound").

Before this court Harcrow relies on Crawford and its progeny to support his argument that the laboratory reports were testimonial hearsay and the admission of those documents violated the Sixth Amendment right to confrontation under Crawford. At the time of the court-martial, admissibility of out-of-court statements, such as the laboratory reports at issue, was generally governed by Ohio v. Roberts, 448 U.S. 56 (1980). Under Roberts, hearsay statements could be admitted if they carried an adequate indicia of reliability. Id. at 66; see also Magyari, 63 M.J. at 125. Under M.R.E. 803(6), forensic laboratory reports were characterized as "normally admissible,"

8

generally meeting the criteria for a business records exception to the hearsay rule.

After the court-martial concluded and while this case was on direct review, the Supreme Court issued Crawford, which changed the analytical framework set out in Roberts for determining the admissibility of testimonial hearsay statements. As we stated in Magyari, Crawford "transformed the inquiry to one hinging on whether the out-of-court statement comes within the scope of the Sixth Amendment because it 'bears testimony' against an accused. The lynchpin of the Crawford decision . . . is its distinction between testimonial and nontestimonial hearsay. . . ." 63 M.J. at 125-26 (citations and quotation marks omitted). In Whorton v. Bockting, 127 S. Ct. 1173, 1180, 1184 (2007), the Supreme Court held that Crawford announced "a 'new rule' of criminal procedure," which under Griffith v. Kentucky, 479 U.S. 314 (1987), is retroactive on direct appeal.

At the time of trial, admissibility of the laboratory reports found support in M.R.E. 803(6) and Roberts. In that context, counsel's strategic decision may well have been prudent. Crawford, however, opened the door for a colorable assertion of the right to confrontation where it was not previously available, and which under Bockting is now applicable on direct review. In this legal and factual context, defense counsel's trial strategy could not be considered an "intentional

"intentional relinquishment or abandonment" of Harcrow's right to confront the laboratory personnel under Crawford. Cf. United States v. Stines, 313 F.3d 912, 917 (6th Cir. 2002) (reasoning that there was no waiver because it "would have been impossible for the defendants to have intentionally relinquished or abandoned the Apprendi based claims considering Apprendi was decided after they were sentenced").

Accordingly, we conclude that there was no waiver in this case. Rather defense counsel's "no objection" statements are appropriately treated as forfeitures, which require further analysis under the plain error rule. M.R.E. 103(d).

ANALYSIS OF CRAWFORD UNDER THE PLAIN ERROR RULE

In order to prevail under a plain error analysis, Harcrow must demonstrate that: "'(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right.'" Magyari, 63 M.J. at 125 (quoting United States v. Tyndale, 56 M.J. 209, 217 (C.A.A.F. 2001)). Because Crawford is retroactively applicable to this direct appeal, we address the first prong by considering whether the laboratory reports in this case constitute inadmissible hearsay under Crawford, which is a question of law that we review de novo. See United States v. Gardinier, 65 M.J. 60, 65 (C.A.A.F. 2007).

The Confrontation Clause of the Sixth Amendment states: "In all criminal prosecutions, the accused shall enjoy the right

. . . to be confronted with the witnesses against him . . . ." U.S. Const. amend VI.  Under Crawford, the Confrontation Clause bars the admission of testimonial statements of a witness who did not appear at trial unless the witness was unavailable to testify and the defendant had a prior opportunity for cross-examination.  541 U.S. at 53-54.  As we have recognized in past cases, Crawford "'set forth various formulations of the core class of testimonial statements'" without articulating a comprehensive definition of "testimonial."  Gardinier, 65 M.J. at 65 (quoting Davis v. Washington, 547 U.S. 813, 126 S. Ct. 2266, 2273 (2006)).  These include:  (1) ex parte in-court testimony; (2) extrajudicial statements contained in formalized trial materials; and (3) "'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'"  United States v. Rankin, 64 M.J. 348, 351 (C.A.A.F. 2007) (quoting Crawford, 541 U.S. at 51-52).  We do not consider these formulations to constitute an exhaustive list of testimonial statements, but we have recognized that they sometimes serve as a useful baseline to begin analysis of the testimonial quality of the statements in question.  Gardinier, 65 M.J. at 65.

In this case, Harcrow contends that the laboratory reports fall into the third category, arguing that the statements were

made under circumstances which would lead an objective witness reasonably to believe that the statements would be available for use at a later trial. In Rankin, we identified several nonexclusive factors that could be considered when distinguishing between testimonial and nontestimonial hearsay under these circumstances. These factors include: (1) whether the statement was elicited by or made in response to law enforcement or prosecutorial inquiry; (2) whether the statement involved more than a routine and objective cataloging of unambiguous factual matters; and (3) whether the primary purpose for making, or eliciting, the statement was the production of evidence with an eye toward trial. Rankin, 64 M.J. at 352. In taking this approach, "our goal is an objective look at the totality of the circumstances surrounding the statement to determine if the statement was made or elicited to preserve past facts for a criminal trial." Gardinier, 65 M.J. at 65 (citing Davis, 547 U.S. 813, 126 S. Ct. at 2273-74).

We have no difficulty reaching the conclusion that these laboratory reports constitute testimonial statements. Here the laboratory analysis was conducted at the behest of the sheriff's office after arresting Harcrow for suspected drug use. The laboratory reports pertain to items seized from Harcrow's home at the time of the arrest and the reports expressly identify Harcrow as a "suspect."

The facts of this case contrast notably with the facts underlying our holding in Magyari, where we held that random urinalysis entries in the Navy Drug Screening Laboratory database were not testimonial. 63 M.J. at 126-27. In Magyari, the laboratory technicians worked with batches of urine samples that each contained about two hundred individual samples. Id. at 126. The laboratory technicians could not equate a particular sample with a particular person but rather assigned identification numbers to the samples in a batch. Id. The vast majority of samples would not test positive for illegal drugs and not all positive results would end in prosecution. Id. The laboratory personnel in Magyari had no reason to anticipate that any particular sample would test positive and be used at trial and therefore were not "engaged in a law enforcement function, a search for evidence in anticipation of prosecution or trial." Id.

Our reasoning in Magyari that "[b]ecause the lab technicians were merely cataloging the results of routine tests, the technicians could not reasonably expect their data entries would 'bear testimony' against [a]ppellant at his court-martial" does not apply here. Id. at 127 (citation omitted). Here the laboratory tests were specifically requested by law enforcement and the information relayed on the laboratory reports pertained to items seized during the arrest of an identified "suspect."

13

Indeed, in reaching our conclusion in Magyari, we rejected the government's argument that laboratory reports will always be nontestimonial and noted that "lab results or other types of routine records may become testimonial where a defendant is already under investigation, and where the testing is initiated by the prosecution to discover incriminating evidence." Id. As these circumstances are present in this case, we conclude that the laboratory results are testimonial and subject to exclusion under the Confrontation Clause.

Because we find error, the next question is whether the error is plain or obvious. As we discussed above in relation to waiver, prior to Crawford, laboratory reports of this nature were generally admissible under M.R.E. 803(6) and Roberts. Crawford, however, changed the analytical framework set out in Roberts for determining the admissibility of testimonial hearsay statements marking a clear shift away from the test that was grounded in indicia of reliability. See supra pp. 8-9.

The Supreme Court has stated that "where the law at the time of trial was settled and clearly contrary to the law at the time of appeal -- it is enough that an error be 'plain' at the time of appellate consideration." See Johnson v. United States, 520 U.S. 461, 468 (1997) (applying this standard to plain error analysis under Fed. R. Crim. P. 52(b)). In undertaking our plain error analysis in this case, we therefore consider whether

14

the error is obvious at the time of appeal, not whether it was obvious at the time of the court-martial.

We believe our decision in Magyari compels the conclusion that plain or obvious error has been established.  As discussed above, in Magyari we rejected the government's contention that laboratory reports are inherently nontestimonial just because they are business and public records.  63 M.J. at 127.  We recognized that this type of record may be prepared at the "behest of law enforcement in anticipation of a prosecution, which may make the reports testimonial."  Id.  And we made clear that laboratory reports could be testimonial "where a defendant is already under investigation, and where the testing is initiated by the prosecution to discover incriminating evidence."  Id.  These circumstances have been squarely presented here.  Accordingly, under Magyari this error was plain and obvious.[2]

---

[2] Courts in several other jurisdictions have also held that laboratory reports showing the presence of drugs on items seized from a defendant at the time of his or her arrest were testimonial.  See, e.g., Hinojos-Mendoza v. People, 169 P.3d 662, 666-67 (Colo. 2007); Thomas v. United States, 914 A.2d 1, 12-14 (D.C. 2006); State v. Laturner, 163 P.3d 367, 375-76 (Kan. Ct. App. 2007); State v. Caulfield, 722 N.W.2d 304, 308-09 (Minn. 2006); State v. March, 216 S.W.3d 663, 665-66 (Mo. 2007); State v. Miller, 144 P.3d 1052, 1058 (Or. Ct. App. 2006).  But see, e.g., Pruitt v. State, 954 So. 2d 611, 617 (Ala. Crim. App. 2006); Commonwealth v. Verde, 827 N.E.2d 701, 704-06 (Mass. 2005).  In light of Magyari's clear direction on this issue, holdings such as those from the Alabama and Massachusetts state courts do not impact our plain error determination.

15

Having found plain and obvious error, we turn to prejudice and consider whether the admission of the laboratory reports materially prejudiced a substantial right. Because this case involves constitutional error, the question is whether the Government has shown that the error was harmless beyond a reasonable doubt. Brewster, 61 M.J. at 432. We determine that the Government has met its burden.

During questioning, Harcrow admitted to using cocaine earlier on the night of his arrest. He also admitted that a jeweler's bag in his home contained cocaine and a hypodermic syringe contained heroin. It was these admissions, rather than the laboratory reports, which constituted the primary evidence against Harcrow on the drug-related charges.

Harcrow's admissions, however, can only be used as evidence if they are independently corroborated. M.R.E. 304(g).[3] The standard for corroboration is "very low." United States v. Seay, 60 M.J. 73, 80 (C.A.A.F. 2004). "'Corroborating evidence must raise only an inference of truth as to the essential facts admitted.'" Id. at 79 (quoting United States v. Cottrill, 45 M.J. 485, 489 (C.A.A.F. 1997)). "This inference may be drawn

---

[3] Under M.R.E. 304(g), "[a]n admission or a confession of the accused may be considered as evidence against the accused on the question of guilt or innocence only if independent evidence, either direct or circumstantial, has been introduced that corroborates the essential facts admitted to justify sufficiently an inference of their truth."

from a quantum of corroborating evidence that this Court has described as very slight." United States v. Arnold, 61 M.J. 254, 257 (C.A.A.F. 2005) (citation and quotation marks omitted). The laboratory reports served as corroborating evidence, but the Government argues that there was sufficient evidence independent of the laboratory reports to corroborate Harcrow's admissions. We agree.

One of the arresting deputies, relying on his experience and a six-month training course at a criminal justice academy, testified that Harcrow appeared under the influence of an illegal narcotic at the time of the arrest. The other arresting deputy, also relying on his training and experience, testified that he observed cocaine residue on a metal spoon and heroin in a syringe. This testimony from the law enforcement officers provided sufficient corroboration of Harcrow's admissions.

Furthermore, Harcrow has not demonstrated what, if anything, he would have done at trial if he had been given the opportunity to confront laboratory personnel about their reports. For these reasons, the Government has met its burden of demonstrating that any error was harmless beyond a reasonable doubt and Harcrow has failed to demonstrate that such an error materially prejudiced a substantial right.

DECISION

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

United States v. Harcrow, No. 07-0135/MC

RYAN, Judge (concurring):

I concur with the majority opinion, but write separately on two small points.

First, Appellant is entitled to avail himself of the plain error doctrine here only because Crawford v. Washington, 541 U.S. 36 (2004), announced a "new rule" while his case was on direct review -- not because the military judge in this case did anything wrong. See Whorton v. Bockting, 127 S. Ct. 1173, 1180-81 (2007) (describing Crawford as creating a new, non-watershed, rule); United States v. Ziskind, 491 F.3d 10, 14 (1st Cir. 2007) (applying the plain error standard on direct review to a case tried before Crawford was decided); Thomas v. United States, 914 A.2d 1, 20 (D.C. 2006) (applying Crawford retroactively using the plain error standard to a case on direct review).

This case illustrates the curious outcome flowing from the confluence of the retroactivity rule and the plain error doctrine. See Griffith v. Kentucky, 479 U.S. 314, 322-23 (1987); United States v. Olano, 507 U.S. 725, 733-34 (1993). Such a posture requires us to accept, and act upon, three fictions: (1) that Crawford had been decided at the time of Appellant's trial; (2) that, had Appellant's trial counsel known about Crawford, he would not have forfeited his objection to the lab reports; and (3) that the military judge would have, despite

*Crawford*, erroneously allowed the reports to be admitted.[1]  See

United States v. Harcrow, __ M.J. ___ (6-7) (C.A.A.F. 2008).  It

is apparent that it is at least a misnomer to suggest that the

military judge committed error at trial here.  And it remains

the case that a military judge is not required to probe,

inquire, or otherwise do anything when there is a lack of

objection to evidence that might be objected to.  See, e.g.,

Huddleston v. United States, 485 U.S. 681, 690 n.7 (1988)

(noting that it is not the duty of the trial judge to sua sponte

prevent the admission of objectionable evidence).

Second, evidence that qualifies under Military Rule of

Evidence 803(6)'s business record exception is nontestimonial

evidence.  Crawford, 541 U.S. at 56 (noting that business

records "by their nature [are] not testimonial"); see also id.

at 76 (Rehnquist, C.J., joined by O'Connor, J., concurring in

the judgment) (noting with approval the majority's exclusion of

business records from the definition of testimonial evidence);

---

[1] Of course, Crawford had not been decided.  Further, I doubt anyone seriously believes that the defense counsel would have preferred having the laboratory technicians "testify" and be subject to cross-examination in this case:  Where there is no suggestion that there was any laboratory error, any reasonable attorney would presumably prefer an anemic paper exhibit to live testimony and the exhibit.  And I further question whether the military judge, faced with a Crawford objection to the laboratory reports, would have overruled it, or, if he had granted it, that the Government would not have requested a recess and brought the requisite witnesses to testify.

United States v. Magyari, 63 M.J. 123, 127 (C.A.A.F. 2006) (concluding that laboratory evidence was admissible because it was not made in anticipation of litigation and was a "record of 'regularly conducted' activity"); United States v. Washington, 498 F.3d 225, 229 (4th Cir. 2007) (admitting laboratory reports over a Confrontation Clause challenge); United States v. Ellis, 460 F.3d 920, 924 (7th Cir. 2006) (recognizing that statements embodied in business records are nontestimonial); United States v. Baker, 458 F.3d 513, 519 (6th Cir. 2006) (holding that "business records are nontestimonial and therefore do not implicate the Confrontation Clause concerns of Crawford"); United States v. Hagege, 437 F.3d 943, 958 (9th Cir. 2006) (holding "[b]usiness records fall outside the core class of 'testimonial evidence,' and thus are not subject to the absolute requirement of confrontation established in Crawford").

But evidence is not admissible as a business record if it is made in anticipation of litigation. Compare United States v. Feliz, 467 F.3d 227, 236 (2d Cir. 2006) (holding that an autopsy report was admissible as a business record because it was not made in anticipation of litigation), and United States v. Bahena-Cardenas, 411 F.3d 1067, 1075 (9th Cir. 2005) (holding "that [a] warrant of deportation is nontestimonial because it was not made in anticipation of litigation, and because it is simply a routine, objective, cataloging of an unambiguous

factual matter"), with Palmer v. Hoffman, 318 U.S. 109, 113 (1943) (holding that an accident report prepared by a railroad did not qualify as business record because it was prepared in anticipation of litigation); United States v. Blackburn, 992 F.2d 666, 670 (7th Cir. 1993) (holding that a report was inadmissible because it "was not kept in the course of a regularly conducted business activity, but rather was specially prepared at the behest of the FBI and with the knowledge that any information it supplied would be used in an ongoing criminal investigation"), and United States v. Stone, 604 F.2d 922, 925-26 (5th Cir. 1979) (holding that an affidavit prepared by a United States Treasury Department official was inadmissible because it was prepared in anticipation of litigation).

In this case, the laboratory reports were made by laboratory technicians who almost certainly knew: (1) the reports were being prepared at the request of law enforcement; (2) the evidence was gathered during an arrest; and (3) the reports were being generated in anticipation of a specific prosecution. See Harcrow, ___ M.J. ___ (12-13). On these facts there remains a question in my mind as to whether the reports were admissible under the business record exception to the hearsay rule either before or after Crawford.

4

United States v. Harcrow, No. 07-0135/MC

STUCKY, Judge, with whom EFFRON, Chief Judge, joins (concurring in the result):

I concur in the result, but write separately to emphasize that any error in the admission of the laboratory reports, if error at all, cannot be plain error because the state of the law at issue here was (until today) thoroughly unsettled.

This case was tried in 2002, under the Confrontation Clause regime of Ohio v. Roberts, 448 U.S. 56 (1980), where the sine qua non was whether the out-of-court statement bore "adequate indicia of reliability -- i.e., falls within a 'firmly rooted hearsay exception' or bears 'particularized guarantees of trustworthiness.'" Crawford v. Washington, 541 U.S. 36, 42 (2004) (quoting Roberts, 448 U.S. at 66). Laboratory reports were normally admissible as business records under Military Rule of Evidence (M.R.E.) 803(6), a firmly rooted hearsay exception. See United States v. Rankin, 64 M.J. 348, 353 (C.A.A.F. 2007); United States v. Magyari, 63 M.J. 123, 128 (C.A.A.F. 2006).

While direct appeal in this case was underway, the Supreme Court overruled Ohio v. Roberts and established a new rule in which the "testimonial" or "nontestimonial" nature of the out-of-court statement determined whether the Confrontation Clause affected its admissibility under the Sixth Amendment. Crawford, 541 U.S. at 51. While the Supreme Court later held Crawford not to apply retroactively to judgments in criminal cases that were

already final on direct review, see Whorton v. Bockting, 127 S. Ct. 1173, 1181-84 (2007), the holding in Griffith v. Kentucky, 479 U.S. 314, 322-23 (1987), requires its application to cases, like this one, that were on direct appeal at the time of the decision.

Error is "plain" when it is "obvious" or "clear under current law." United States v. Olano, 507 U.S. 725, 734 (1993). Johnson v. United States, 520 U.S. 461 (1997), held that "plain error" is to be judged as of the time of appellate consideration, taking into account changes in the law since the trial. Id. at 467-68.

This case is not Johnson, however. In Johnson, the law at the time of trial was clear, but was later changed by an opinion of the Supreme Court such that it was once again clear, but contrary, at the time of appellate consideration. Id. at 467-68. Here, the law was clear at the time of trial -- Ohio v. Roberts -- but the Supreme Court's decision in Crawford has thrown it into doubt rather than either confirming it or clearly changing it.

Where the law was unsettled at the time of trial and remained unclear at the time of appeal, a decision by a trial court cannot be plain error. 28 James Wm. Moore et al., Moore's Federal Practice, § 652.04[3], at 652-22 n.34 (3d ed. 2007)

(citing cases from eleven of the twelve federal circuits).  It would seem to follow, then, that where the court <u>correctly</u> applied existing law at trial, but the law subsequently became unsettled and was unsettled when the case was on appeal, there could be no plain error.

That the law on the admissibility of laboratory reports was thrown into flux by <u>Crawford</u> is undeniable.  <u>Compare</u> <u>United States v. Ellis</u>, 460 F.3d 920, 923-27 (7th Cir. 2006), <u>People v. Geier</u>, 161 P.3d 104, 133-40 (Cal. 2007), <u>State v. O'Maley</u>, 932 A.2d 1, 9-15 (N.H. 2007), <u>State v. Forte</u>, 629 S.E.2d 137, 142-45 (N.C. 2006), <u>Commonwealth v. Verde</u>, 827 N.E.2d 701, 705-06 (Mass. 2005), <u>State v. Dedman</u>, 2004 NMSC 37, ¶¶ 24-32, 136 N.M. 561, 102 P.3d 628, <u>People v. Meekins</u>, 828 N.Y.S.2d 83, 85 (N.Y. App. Div. 2006), <u>Pruitt v. State</u>, 954 So. 2d 611, 615-17 (Ala. Crim. App. 2006) (all holding lab reports are nontestimonial), <u>with</u> <u>Hinojos-Mendoza v. People</u>, 169 P.3d 662, 667 (Colo. 2007), <u>State v. March</u>, 216 S.W.3d 663, 665-67 (Mo. 2007), <u>Thomas v. United States</u>, 914 A.2d 1, 5 (D.C. 2006), <u>cert. denied</u>, 128 S. Ct. 241 (2007), <u>City of Las Vegas v. Walsh</u>, 124 P.3d 203, 208 (Nev. 2005), <u>State v. Laturner</u>, 163 P.3d 367, 376 (Kan. Ct. App. 2007), <u>State v. Moss</u>, 160 P.3d 1143, 1148-49 (Ariz. Ct. App. 2007), <u>State v. Smith</u>, 2006-Ohio-1661, ¶ 16 (Ohio Ct. App. 2006), <u>Johnson v. State</u>, 929 So. 2d 4, 7 (Fla. Dist. Ct. App.

2005) (all holding lab reports are testimonial).  A certiorari petition raising the question is presently before the Supreme Court.  Commonwealth v. Melendez-Diaz, 870 N.E.2d 676 (Mass. Ct. App. 2007), petition for cert. filed, 76 U.S.L.W. 3255 (U.S. Oct. 26, 2007) (No. 07-591).

The majority relies on dictum in Magyari as the basis for concluding that the error was plain.  I do not find that dictum persuasive authority for such a holding.  As neither the Supreme Court nor this Court (until today) had resolved the admissibility of such criminal laboratory reports under Crawford, and other courts are split on the issue, there can be no plain error.  See United States v. Springer, 165 F. App'x 709, 715 (11th Cir. 2006).