# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
KERN, ALDYKIEWICZ, and MARTIN
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist CARLOS I. VELASQUEZ**
**United States Army, Appellant**

ARMY 20110296

Headquarters, Fort Bliss
David H. Robertson, Military Judge (arraignment)
Andrew C. Efaw, Military Judge (trial)
Colonel Francis P. King, Staff Judge Advocate

For Appellant:  Colonel Patricia A. Ham, JA; Major Jacob D. Bashore, JA; Captain Ian M. Guy, JA (on brief).

For Appellee:  Lieutenant Colonel Amber J. Roach, JA; Major Robert A. Rodrigues, JA; Major Thomas E. Brzozowski, JA (on brief).

9 April 2013

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

MARTIN, Judge:

The military judge sitting as a special court-martial convicted appellant, pursuant to his pleas of being drunk and disorderly in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (2006) [hereinafter UCMJ]. Contrary to his pleas, a panel composed of officer members convicted appellant of striking a superior commissioned officer in violation of Article 90, UCMJ. The panel sentenced appellant to the maximum punishment of a bad-conduct discharge, confinement for twelve months, forfeiture of $978.00 pay per month for twelve months, and reduction to the grade of E-1. The convening authority approved the adjudged sentence.

Appellant raises three assignments of error for our review under Article 66, UCMJ, of which one merits discussion but no relief. Appellant asserts that the military judge committed plain error in allowing the panel to consider the records of appellant's prior nonjudicial punishment imposed pursuant to Article 15, UCMJ (Article 15s). For the reasons set forth below, we find appellant waived this issue.

## BACKGROUND

Appellant and his friend, Specialist (SPC) MW, attended an Oktoberfest celebration on the Fort Bliss, Texas, installation. After spending approximately twelve hours at the party, and drinking heavily throughout the day, they walked to their vehicle in the parking lot. The evidence was undisputed that appellant was highly intoxicated. Before arriving at the car, SPC MW left appellant in place while he returned to the festival area in order to use the restroom.

Captain (CPT) DW and her husband, Mr. RW, also attended the Oktoberfest celebration. The evidence showed they also drank alcohol during the evening. The exact number of drinks they consumed throughout the course of the night was disputed, and both were clearly agitated by their encounter with appellant later in the evening. As they walked through the parking lot towards their car, CPT DW, who was wearing civilian clothes, came upon appellant speaking loudly and using expletives. Captain DW told appellant to "[p]olice himself up." Appellant then directed obscenities and expletives at CPT DW.

By that time, SPC MW had returned from the restroom and found appellant shouting at CPT DW. Specialist MW attempted to step in front of appellant, just as appellant swung his fist at CPT DW. Appellant missed, and CPT DW immediately tried to back away from the situation, directing appellant to, "At ease." At the same time, she yelled out her name and rank. Appellant responded with a false rank, yelling that he was a Sergeant First Class. Appellant lunged at her again, this time striking her in the face with his fist. A German Army officer, who was also attending the festival, attempted to step in front of appellant, and tried to calm him down. Appellant still managed to grab CPT DW by the lapel of her shirt, and pushed her in the chest and into a nearby van. Her husband, who was talking to someone and walking about fifty feet behind his wife, heard her yell out her name and rank, and immediately ran over to her location. He arrived just as appellant was pushing his wife into the van.

Mr. RW and the German officer subsequently tackled appellant to the ground. A few moments later, the Fort Bliss police responded to the incident. They directed all the parties to separate. Mr. RW was still very agitated, and CPT DW tried to calm her husband and at the same time, identify herself to law enforcement. Specialist MW stood by, and the German officer stepped back as well. Appellant however, did not cooperate with the police officers' verbal commands, and they

forcibly took him down to the ground, placing him in handcuffs. Appellant continued to yell expletives, obscenities, and racial slurs at the arresting officers.

*Appellant's Presentencing Strategy*

On 19 April 2011, appellant was convicted at a special court-martial of being drunk and disorderly and striking a superior commissioned officer. During presentencing, the government introduced a Field Grade Article 15, dated 4 December 2008, showing appellant was punished for drunken operation of a vehicle in violation of Article 111, UCMJ. The battalion commander administered the Field Grade Article 15 when appellant was a Private First Class (E-3), reducing him to the grade of E-1. The government also introduced a Summarized Article 15, dated 9 June 2010, showing that appellant was punished for drunk and disorderly conduct in violation of Article 134, UCMJ. The defense counsel did not object to either Article 15, and the military judge allowed both exhibits into evidence. Appellant's Enlisted Record Brief (ERB) was also offered and admitted into evidence. The ERB reflects appellant's rank reduction, though it does not expressly indicate the reason for the reduction, i.e., imposition of the Field Grade Article 15.

After the Article 15s were admitted into evidence, appellant's defense counsel used the underlying misconduct as a crucial part of the matters he presented in extenuation. Throughout the presentencing case, appellant's defense counsel attempted to show that appellant's command knew he had a serious problem with alcohol dependency, but failed to adequately address the issue.[*] First, defense counsel elicited evidence on direct examination from three different witnesses that appellant was an excellent duty performer that struggled with alcohol off-duty. The witnesses testified as to some of the details underlying both incidents for which appellant received Article 15s. One defense witness referred directly to the Summarized Article 15 itself during direct examination. All the defense sentencing witnesses testified they believed that with the appropriate counseling and treatment, appellant had high rehabilitative potential. Next, during appellant's unsworn statement, he continually mentioned his drinking problems as well as the details regarding the previous alcohol related incidents underlying the Article 15s. Finally, during the defense counsel's presentencing argument, he repeatedly referred to appellant's past troubles with alcohol, discussed the specific occasions that were the subject of both Article 15s, and used the events to build a timeline in an attempt to show that appellant's behavior reflected a downward spiral culminating in the charged offenses. Defense counsel then argued for a minimal period of confinement

---

[*] Appellant was a victim of a sexual assault when he arrived to the unit in February 2008. Defense counsel asserted that appellant used alcohol as a coping mechanism to deal with the assault, and the command was insensitive to the incident and failed to ensure appellant had access to all the victim services he needed after the incident.

and for retention in the Army because appellant desperately needed substance abuse counseling.

## LAW AND DISCUSSION

On appeal, appellant argues that the military judge abused his discretion by admitting appellant's prior Article 15s because they do not meet the requirements contained in Rule for Courts-Martial [hereinafter R.C.M.] 1001(b)(2). However, when the documents were offered by the trial counsel, the defense counsel expressly stated there were no objections. Furthermore, defense counsel incorporated the conduct which was the basis of the Article 15s into his presentencing strategy. Considering the defense's presentencing strategy, we find appellant expressly waived the right to challenge the admissibility of the Article 15s on appeal.

Forfeiture and waiver are distinct concepts. "A forfeiture is basically an oversight; a waiver is a deliberate decision not to present a ground for relief that might be available in the law." *United States v. Campos*, 67 M.J. 330, 331 (C.A.A.F. 2009) (quoting *United States v. Cook*, 406 F.3d 485, 487 (7th Cir. 2005)). This distinction is critical because forfeited issues will be reviewed for plain error, while a valid waiver leaves no error to assess on appeal. *United States v. Harcrow*, 66 M.J. 154, 156 (C.A.A.F. 2008) (citing *United States v. Pappas*, 409 F.3d 828, 830 (7th Cir. 2005)). "It is therefore clear that whether an issue is 'waived' by a party is a threshold issue that must be addressed before a court can consider the substantive issue being appealed." *United States v. Clifton*, 71 M.J. 489, 493 (C.A.A.F. 2013).

We look to the record to determine whether or not appellant affirmatively waived the admission of his prior Article 15s into evidence. An issue can not only be waived expressly, but also by inaction, as long as the failure to raise an objection at trial "constituted an intentional relinquishment of a known right." *Harcrow*, 66 M.J. at 156 (citing *United States v. Olano*, 507 U.S. 725, 733–34 (1993)). "The clarity of the waiver . . . depend[s] on the facts and circumstances surrounding the right and alleged waiver." *United States v. Rera*, ARMY 20090071, 2011 WL 1345064, at *2 (Army Ct. Crim. App. 7 Apr. 2011) (mem. op.). Of note, the alleged error here does not implicate a constitutional right but rather the violation of a presentencing procedural rule promulgated by the President under his Article 36, UCMJ, authority. *See* R.C.M. 1001(b)(2). In *Harcrow* and *Campos*, our superior court discussed several different considerations bearing on the issue of waiver. *Harcrow*, 66 M.J. at 157; *Campos*, 67 M.J. at 333. When taken together, these cases reveal five, nonexhaustive factors relevant to deciding whether a waiver has been clearly established "and there is an intentional relinquishment or abandonment of a known right or privilege," *Harcrow*, 66 M.J. at 157. First, we must determine whether the waiver was part of the defense strategy. *Id.* at 158. Second, we must ascertain whether the right was known or knowable at the time of the alleged waiver. *Id*. Third, we must determine whether the defense had knowledge of the expected

testimony or documentary evidence and had time and opportunity to review it. *Campos*, 67 M.J. at 333. Fourth, we must consider whether the appellant alleges ineffective assistance of counsel in regard to the waiver. *Id.* Finally, we must decide if the defense was given the opportunity to object to the admissibility of the evidence. *Id.* After reviewing the facts of this case in light of these five factors, we conclude appellant waived this issue.

As to the first factor, we find appellant intentionally relinquished this right as part of his presentencing strategy. When the Article 15s were offered, the military judge inquired into whether appellant had any objections, and appellant's defense counsel affirmatively stated, without comment, that he had none. In *United States v. Campos*, our superior court distinguished between situations where testimony is admitted without objection or comment, and those circumstances where the defense counsel displayed an intentional relinquishment of a known right. *Campos*, 67 M.J. at 332. Indeed, if the former were the case, we would simply review for plain error. *Id.* In this case, however, the defense counsel did not simply indicate that he had no objection to the Article 15s—instead, he infused his presentencing case with evidence of the prior misconduct that resulted in the non-judicial punishment. The defense counsel elicited testimony from three different witnesses on direct examination that directly referred to the prior misconduct. One witness even went so far as to mention the summarized Article 15 itself. In his unsworn statement, appellant discussed both incidents that were the subject of the Article 15s at length. Finally, during the defense counsel's presentencing argument, he discussed the timing and circumstances of incidents that resulted in the Article 15s in order to argue that the command failed to take the appropriate steps to address appellant's problems with alcohol.

For the second factor, we conclude the right was known or knowable at the time of trial. Rule for Courts-Martial 1001(b)(2) provides, in pertinent part:

> Under regulations of the Secretary concerned, trial counsel may obtain and introduce from the personnel records of the accused . . . evidence of any disciplinary actions including punishments under Article 15.
>
> "Personnel records of the accused" includes any records made or maintained in accordance with *departmental regulations* that reflect the past military efficiency, conduct, performance, and history of the accused.

R.C.M. 1001(b)(2) (emphasis added). The Army requirements for maintaining records of non-judicial punishment are contained in Army Reg. 27-10, Legal Services: Military Justice [hereinafter AR 27-10] (3 Oct. 2011). Specifically, an Article 15 administered to a soldier in the rank of Specialist (E-4) or below can only

be filed locally with the unit and must be "destroyed at the end of 2 years from the date of imposition of the punishment." AR 27-10, para. 3-37b. Additionally, Summarized Article 15s are specifically excluded from the list of personnel records that a trial counsel can submit pursuant to R.C.M. 1001(b)(2), (d). AR 27-10, paras. 3-44b., 5-29(a)(4).

At the time of appellant's court-martial, his prior Field Grade Article 15 was beyond the two-year retention period. The Summarized Article 15, while still within the two-year retention period and properly maintained in appellant's local file, was inadmissible under R.C.M. 1001(b)(2). The restrictions provided in R.C.M. 1001 (b)(2) and AR 27-10, are well established and have remained static for several years. *See, e.g. United States v. Weatherspoon*, 39 M.J. 762, 767 (A.C.M.R. 1994) (highlighting the same provisions and reaching the same conclusion as to their admissibility).

For the third and fourth factors, we conclude appellant knew of the Article15s' existence and knew of his right to challenge their admissibility yet chose not to do so. Both Article 15s were administered personally to appellant well in advance of trial. Appellant was arraigned on 4 January 2011, and the court-martial took place over two days from 18–19 April 2011. The business records affidavit for the field grade Article 15 document was dated 2 November 2010, while the affidavit for the Summarized Article 15 document was dated 12 April 2011. The ERB was dated 2 November 2010, and clearly reflected that appellant had been reduced in rank on 4 December 2008. Furthermore, appellant does not allege that the trial defense counsel was ineffective. Thus, appellant's knowledge of the Article 15s, combined with the presumption of his defense counsel's competence, *see United States v. Cronic*, 466 U.S. 648, 658 (1984), lead us to conclude that appellant knew of his right to challenge admissibility of the Article 15s. As to the fifth and final factor, the record clearly establishes that the military judge gave the trial defense counsel the opportunity to object to the documents, and the defense counsel expressly stated he had no objections without further comment.

Based on the review of the record, we therefore conclude that the right to challenge the admissibility of the Article 15s was waived at trial which leaves us with no error to correct on appeal.

## CONCLUSION

On consideration of the entire record, appellant's assigned errors, and the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), we hold the findings of guilty are correct in law and fact. Accordingly, the findings of guilty and the approved sentence are AFFIRMED.

VELASQUEZ—ARMY 20110296

Senior Judge KERN and Judge ALDYKIEWICZ concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court