# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**F.D. MITCHELL, J.A. FISCHER, M.K. JAMISON**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**ALLYSSA K. SIMMERMACHER**
**HOSPITAL CORPSMAN THIRD CLASS (E-4), U.S. NAVY**

**NMCCA 201300129**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 4 October 2012.
**Military Judge:** LtCol Charles Hale, USMC.
**Convening Authority:** Commander, Walter Reed National
Military Medical Center, Bethesda, MD.
**Staff Judge Advocate's Recommendation:** LCDR K.J. Ian, JAGC,
USN.
**For Appellant:** LT Jared A. Hernandez, JAGC, USN.
**For Appellee:** Maj Crista D. Kraics, USMC; Maj David N.
Roberts, USMC.

**29 May 2014**

---------------------------------------------------------
**OPINION OF THE COURT**
---------------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS
PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

JAMISON, Judge:

A general court-martial composed of officer and enlisted
members convicted the appellant, contrary to her pleas, of
making a false official statement and wrongfully using cocaine
in violation of Articles 107 and 112a, Uniform Code of Military
Justice, 10 U.S.C. §§ 907 and 912a.  The members sentenced the

appellant to reduction to pay grade E-3 and a bad-conduct discharge.  The convening authority (CA) approved the sentence as adjudged.

The appellant raises three assignments of error (AOE).  In her first AOE, the appellant argues that the military judge abused his discretion when he denied her motion to suppress her positive urine sample and abate the proceedings based on the fact that the Naval Drug Screening Laboratory Jacksonville, Florida (NDSL JAX) destroyed her urine sample prior to the preferral of charges.  In her second AOE, the appellant argues that the military judge erred when he applied only a constitutional due process analysis in his ruling denying the appellant's motion to suppress and not the more favorable military regulatory due process requirements associated with the destruction of evidence.  In her third AOE, the appellant argues that the military judge erred by admitting testimonial hearsay in the form of a handwritten notation in the NDSL JAX documentation in violation of her right to confrontation.

After consideration of the pleadings of the parties and the record of trial, we conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed.  Arts. 59(a) and 66(c), UCMJ.

## Background

This case originally began as an investigation into allegations of abuse of the appellant's infant son, which allegedly occurred in November of 2008.  In 2009, the Montgomery County Police Department, Maryland, opened an investigation into those allegations of abuse.  For reasons that are unclear in the record, the Montgomery County Police Department suspended its investigation and, at some point in 2010, the Naval Criminal Investigative Service (NCIS) took over the investigation.

On 3 March 2011, while the NCIS investigation was ongoing, the appellant submitted a urine sample as part of a random urinalysis.  After assigning her urine sample a unique laboratory accession number (LAN), NDSL JAX screened her sample and it tested presumptively positive for cocaine based on two immunoassay tests.  The NDSL then conducted a gas chromatograph/mass spectrometry (GC/MS) confirmation test for cocaine on 15 March 2011.  The GC/MS test detected the presence of the cocaine metabolite above the Department of Defense (DoD) cutoff level.

On 21 March 2011, NCIS agents interrogated the appellant regarding her positive urinalysis for cocaine use, as well as the allegations of abuse of her son. The appellant denied using cocaine or any other illegal drug. She also denied having injured her son, and she provided a timeline of events surrounding the alleged injuries.

Based on a request from the CA, NDSL JAX provided the appellant's command by letter dated 11 April 2011 with a full report of the testing that revealed that the appellant's urine sample had been confirmed as positive for the cocaine metabolite. Appellate Exhibit XX at 24; Prosecution Exhibit 1 at 1. In this letter, the NDSL informed the appellant's command that her urine sample would be disposed of on 16 March 2012 unless an extension was requested. No request having been forthcoming, NDSL JAX destroyed the appellant's sample on or about 16 March 2012, consistent with its own and DoD policy.

Following an Article 32, UCMJ, investigation, the CA referred two specifications of making a false official statement, one specification of wrongful use of cocaine, two specifications of assault consummated by a battery upon a child, and one specification of child endangerment. As part of pretrial litigation, the appellant moved for, and the military judge granted, severance of the charges associated with the appellant's wrongful use of cocaine from the charges alleging child abuse and child endangerment. AE XLIII.

In addition to the motion to sever, the appellant moved to suppress the results of the urinalysis based on the fact that NDSL JAX destroyed her positive urine sample. AE XX. The appellant called the Commander, Fort Meade Forensic Toxicology Drug Testing Laboratory, Major MM, U.S. Army, to offer expert testimony on the motion to suppress. Record at 304. The military judge qualified Major MM as an expert in forensic toxicology. He testified that the appellant's sample tested above the Department of Defense (DoD) cutoff level of 100 nanograms per milliliter and that her sample was kept in frozen storage and destroyed one year after testing positive in accordance with DoD policy. Major MM also testified that in his experience, he had never had a sample subject to a retest come back as negative. *Id*. at 321. Additionally, he testified that if the appellant's sample would have been retested, Major MM would have expected the sample to test positive at a slightly lower nanogram level, but not enough to make a difference for purposes of the DoD cutoff level. *Id*.

After considering all the evidence, the military judge denied the appellant's motion to suppress.  AE XLII.  He concluded the following:  that the appellant had not met her burden of having shown bad faith on the part of the Government; that the sample was destroyed as part of the NDSL's normal handling procedures; and, that the appellant had provided no evidence that the retest would have had any exculpatory value. *Id.*  As a remedial measure, however, the military judge instructed the members that the sample was destroyed and that they may "infer the missing evidence would have been adverse to the prosecution."  Record at 892.  Additional facts necessary for the resolution of a particular AOE are included below.

**Discussion**

*Destruction of the Appellant's Positive Urine Sample*

In her first two AOEs, the appellant takes issue with the military judge's denial of the motion to suppress.  First, she argues that the military judge erred by failing to suppress the appellant's sample because the evidence was of central importance to a fair trial and denied her the opportunity to request to retest the sample to "examine all possible forensic defenses."  Appellant's Brief of 3 Oct 2013 at 10.  Second, the appellant argues that the military judge erred when he considered only the constitutional due process implications associated with the destruction of evidence and not the implications of RULE FOR COURTS-MARTIAL 703(f)(2), MANUAL FOR COURTS-MARTIAL (2012 ed.).  *Id.* at 16.  We disagree and address these two AOEs seriatim.

We review a military judge's denial of a suppression motion under an abuse of discretion standard and "consider the evidence 'in the light most favorable to the' prevailing party."  *United States v. Rodriguez*, 60 M.J. 239, 246 (C.A.A.F. 2004) (quoting *United States v. Reister*, 44 M.J. 409, 413 (C.A.A.F. 1996)).  We review the military judge's "factfinding under the clearly erroneous standard and [his] conclusions of law under the *de novo* standard."  *United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F. 1995) (citations omitted).  We will find an abuse of discretion if the military judge's "findings of fact are clearly erroneous or his conclusions of law are incorrect."  *Id*.

Based on our review of the record, we conclude that the military judge's findings were not clearly erroneous, and we adopt them for purposes of our appellate review.  With regard to the military judge's conclusions of law and his ruling, the

4

central question turns on whether the appellant's destroyed sample was "material exculpatory evidence" or "potentially useful evidence." *Illinois v. Fisher*, 540 U.S. 544, 547-48 (2004). The appellant bears the burden to show that the destroyed evidence was exculpatory. *United States v. Kern*, 22 M.J. 49, 51 (C.M.A. 1986). The military judge concluded that the appellant failed to demonstrate that the destroyed urine sample was materially exculpatory. AE XLII at 3. We agree. The appellant's own expert testified that a retest would have resulted in a slightly lower nanogram level, but still above the DoD cutoff level. Record at 321. As a consequence, the destroyed sample, at best, met the definition of "potentially useful evidence," which includes evidence "'of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the [appellant].'" *Fisher*, 540 U.S. at 547-48 (quoting *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988)).

Having found that the destroyed urine sample was at best "potentially useful evidence," we next consider the military judge's ruling denying the motion to suppress. Based on our analysis, we conclude that the military judge did not abuse his discretion because suppression is only required if the Government acted in bad faith in destroying the appellant's positive urine sample. *Youngblood*, 488 U.S. at 57-58; *see Fisher*, 540 U.S. at 549 (holding in a *per curiam* opinion that the "bad-faith requirement in *Youngblood* depended" not on the value or weight of the destroyed evidence, "but on the distinction between 'material exculpatory' evidence and 'potentially useful' evidence").

Under the circumstances of this case, we find no bad faith on the part of the Government in following NDSL and DoD policy and destroying the appellant's urine sample one year after it was confirmed positive for the cocaine metabolite. We agree with the military judge that the Government's negligent oversight in not requesting the NDSL to retain the appellant's positive urine sample did not rise to the level of bad faith. The investigatory and -- until the military judge severed the charges -- the prosecutorial focus was on the appellant's alleged culpability with regard to the injuries to her son.

We also conclude that the military judge fashioned an appropriate remedy for the Government's having destroyed the appellant's positive urine sample. He instructed the members that because of the destruction of the appellant's sample, they "may infer that the missing evidence would have been adverse to

5

the prosecution."  Record at 892; AE XXXVII at 2-3.[1]  Not only was this remedy within the clear discretion of the military judge, *Kern*, 22 M.J. at 52, but it was also arguably more helpful to the appellant's case.  *See Youngblood*, 488 U.S. at 60 (stating that based on the state's inadvertent destruction of certain evidence, the trial court's instruction that the jury could infer this evidentiary fact against the prosecution, "the uncertainty as to what the evidence might have proved [in Mr. Youngblood's case] was turned to [his] advantage") (Stevens, J., concurring in the judgment).  In this regard, based on the military judge's instruction, the appellant was able to turn an evidentiary unknown into an evidentiary advantage.

Next, we consider the appellant's related AOE (AOE II), in which she argues that even if the military judge correctly applied the constitutional due process requirements of *Youngblood*, he erred in failing to analyze the regulatory implications of the destroyed sample.  Citing *United States v. Manuel*, 43 M.J. 282 (C.A.A.F. 1995), for the general proposition that due process requirements for destroyed evidence under R.C.M. 703(f)(2) are more favorable to an accused than constitutional requirements, the appellant argues that the military judge erred by not analyzing the destruction of the appellant's sample through the President's regulatory due process lens.  Appellant's Brief at 16-17.  We disagree both with the appellant's premise and her conclusion.

We first consider the appellant's underlying premise that the military judge did not consider R.C.M. 703(f)(2).  Having considered the military judge's ruling, we find that he did apply R.C.M. 703(f)(2) in his analysis.  First, the military judge specifically cited R.C.M. 703(f)(2).  AE XLII at 1.  Second, he articulated his analysis in terms of both "constitutional" and "military standards of due process."  *Id*. at 3.

We also disagree with the appellant's conclusion that *Manuel* stands for the general proposition that with regard to destroyed evidence, the President's due process requirements are analyzed differently under R.C.M. 703(f)(2) than the constitutional due process requirements.  *See Kern*, 22 M.J. at

---

[1] The military judge invited defense counsel to craft an instruction for the members with regard to the destroyed evidence.  The appellant's defense counsel submitted AE XXXIV.  After discussing the matter on the record, the military judge agreed with the defense request that the tailored instruction to be given would be "adverse to the prosecution" as opposed to "favorable to the defense."  Record at 878.

51 (holding that military law "does not place stricter requirements on the Government to preserve evidence which is not 'apparently' exculpatory than is required of the states under the fourteenth amendment to the Constitution. . . . [as *California v.*] *Trombetta*[, 467 U.S. 479 (1984)] satisfies both constitutional and military standards of due process").

We do not interpret *Manuel* as broadly as the appellant.  In *Manuel* the Air Force Court of Military Review (AFCMR) set aside Staff Sergeant (SSgt) Manuel's conviction for cocaine, and the Air Force Judge Advocate General certified the case to the Court of Appeals for the Armed Forces (CAAF).  *Manuel*, 43 M.J. at 283.  Evidence at trial reflected that SSgt Manuel's sample was destroyed in an untimely manner contrary to the drug testing laboratory's policy and that its destruction was "grossly negligent."  Based on those facts, the CAAF concluded that the AFCMR did not abuse its discretion in setting aside the conviction.  *Id*. at 289.  In fact, the CAAF went to great lengths to narrow its holding in *Manuel*.  *See id*. ("[w]e hold only that the Court of Military Review did not abuse its discretion by following that course of remedial action here") (footnote and citations omitted).

Unlike our sister court, we exercise our discretion and chose not to follow the AFCMR's remedial action in *Manuel*.  Unlike the facts in *Manuel*, we find no "gross negligence" on the part of the Government and no violation of NDSL or DoD policy with regard to the destruction of the appellant's urine sample.  Accordingly, we distinguish *Manuel* on its facts and conclude that the military judge did not abuse his discretion in denying the appellant's motion to suppress.  Additionally, we hold consistent with *Kern* and *Manuel* that the military judge's course of remedial action -- a favorable evidentiary instruction -- was not an abuse of discretion.  *See Manuel*, 43 M.J. at 289 (holding that the appropriate remedy for "destruction of evidence is left to the lower court's discretion") (citation omitted).

*Handwritten Annotation on the Drug Testing Documentation Report*

As part of its case-in-chief, the prosecution offered PE 1, the drug testing documentation report associated with the LAN linked to the appellant's urine sample.  Record at 554.  The appellant interposed no objection and the military judge admitted the 40-page-exhibit.[2]  *Id*.

---

[2] PE 1 is heavily redacted to ensure compliance with *United States v. Blazier*, 69 M.J. 218 (C.A.A.F. 2010) and *Sweeney*.  With the exception of the

7

The prosecution called Dr. RB, chemist and certifying official, NDSL JAX. Record at 748. Without objection by the appellant, the military judge qualified Dr. RB as an expert in chemistry and toxicology. *Id*. at 752. Dr. RB was the NDSL's certifying official for the appellant's positive urine sample. With regard to the GC/MS testing of the appellant's sample, Dr. RB testified that the label that contained the bar code with the appellant's LAN was placed either too high or too low on the vial so that the instrument was unable to read the LAN. *Id*. at 763-64. Because the machine was unable to read the bar code, a technician had to physically pick up the vial and verify the LAN printed on the bar code. *Id*.

For the first time on appeal, the appellant argues that the hand-written annotation of the appellant's LAN was testimonial and the Government's failure to call the technician who made the handwritten annotation violated her constitutional rights to confrontation. We disagree.

Because the appellant failed to object at trial to the admission of PE 1, we review for plain error. *United States v. Sweeney*, 70 M.J. 296, 303 (C.A.A.F. 2011). We find none.

The initial question in this AOE is whether the handwritten copy of the machine-generated LAN printed on the bar code qualifies as a testimonial statement. We review this legal question *de novo*. *United States v. Tearman*, 72 M.J. 54, 58 (C.A.A.F. 2013). Whether a particular statement is testimonial turns on whether that statement is an "'incontrovertibl[e] . . . affirmation[] made for the purpose of establishing or proving some fact' in a criminal proceeding." *Bullcoming v. New Mexico*, 564 U.S. __, 131 S.Ct. 2705, 2716 (2011) (quoting *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009)); *see also Sweeney*, 70 M.J. at 305 (stating that signatures and notations on internal chain of custody documents and data review sheets are nontestimonial for purposes of plain error review); *Tearman*, 72 M.J. at 59 (holding that none of the chain-of-custody documents or the internal review worksheets that contained names, signatures, and dates qualify as testimonial statements).

Under the circumstances of this case, we conclude that the technician's handwritten copy of the LAN associated with the appellant's urine sample did not qualify as a solemn affirmation "made in order to prove a fact at a criminal trial."

handwritten LAN entry, the appellant does not assert that any other annotation within the redacted exhibit is testimonial.

8

*Bullcoming*, 131 S.Ct. at 2716 (citation and internal quotation marks omitted).  The LAN, J1002833048, while unique to the appellant, and printed throughout Prosecution Exhibit 1, does not prove a fact at a criminal trial.  Rather, the handwritten annotation is similar in evidentiary scope to a machine-generated data entry.  In fact, this was a mere repetition of machine-generated data because the machine-generated LAN appears twice on the two lines immediately above the handwritten annotation.  PE 1 at 30.[3]  Accordingly, we hold that the simple copying of a machine-generated LAN does not qualify as testimonial hearsay.

Additionally, we conclude that under the unique circumstances of this case, the appellant cannot meet her plain error burden.  First, she cannot meet her burden of demonstrating an error because her assertion of error is predicated the assertion that the handwritten copy of the LAN is testimonial, a premise we reject.  The appellant cites no authority for her argument that the handwritten LAN is testimonial, other than her desire to preserve this issue for purposes of appeal.  Appellant's Brief at 18.[4]  Accordingly, the appellant fails in her burden to demonstrate that the error was plain or obvious.  *United States v. Harcrow*, 66 M.J. 154, 158 (C.A.A.F. 2008).

Finally, the appellant cannot demonstrate any prejudice associated with the apparent misplacement of a bar code label on her vial that caused the machine to be unable to read the label.[5]  Dr. RB testified that the technician had to make an additional and independent verification to ensure that the appellant's sample was injected into the vial in question.  Record at 763.  This required the technician to "pick up the vial [and] verify the Laboratory Accession Number that's printed by the bar code." *Id*. at 764.

---

[3] PE 1 contains two different paginations.  Based on our review of the record, Dr. RB refers to page 30 of PE 1.  Record at 763-64.  For purposes of our analysis we cite to the pagination as referenced in the record.

[4] The appellant's preservation of this issue is premised on the-then pending petition for writ of certiorari in *Tearman*.  That writ was denied on 7 October 2013.  134 S.Ct. 268 (Oct. 7, 2013) (summary disposition).

[5] Because we conclude that the physical verification and annotation on PE 1 by a lab technician does not qualify as testimonial hearsay, we analyze the appellant's assertion of error by placing the burden on her to demonstrate material prejudice to her substantial rights by analyzing the handwritten annotation as nontestimonial hearsay.  *Harcrow*, 66 M.J. at 158; Military Rule of Evidence 103(d), Manual for Courts-Martial, United States (2012 ed).

In this case, we agree with the military judge's observation that, if anything, the appellant's sample received greater scrutiny due to the fact that its LAN had to be manually read and verified. Record at 949. There is no evidence the technician associated the appellant with that particular LAN. In fact, Dr. RB testified that this manual verification did not affect in any way the chain-of-custody or the testing procedures and that every other sample was read properly by the machine. *Id*. at 764. Additionally, Dr. RB testified as the certifying official that there were no discrepancies associated with testing of the appellant's sample. *Id*. at 769, 783, and 785.

Under the circumstances of this case, we find that even if error, the admission of the handwritten LAN did not prejudice the appellant. *See United States v. Marcus*, 560 U.S. 258, 262 (2010) (stating that to be "prejudicial" under the Supreme Court's plain error test, a defendant must demonstrate "a reasonable probability that the [alleged] error affected the outcome of the trial"). Redacting the handwritten LAN would not have had an effect on the overall integrity of the testing of the appellant's sample because the technician's manual verification did not in any way affect the calibration or testing parameters of the GC/MS test. With regard to factors that may have affected the outcome of the appellant's trial, we note that the Government relied on additional circumstantial evidence to argue its case. In addition to the positive urinalysis, we are mindful of the testimony of CD, the appellant's estranged boyfriend. According to CD, the appellant requested on at least ten separate occasions that he testify falsely at her court-martial that he had used cocaine and that cocaine got into the appellant's system through their having had sexual intercourse. Record at 800.

## Conclusion

The findings and the sentence as approved by the CA are affirmed.

Senior Judge MITCHELL and Judge FISCHER concur.

For the Court

R.H. TROIDL
Clerk of Court

10