# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**F.D. MITCHELL, J.A. FISCHER, M.K. JAMISON**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**JONATHAN D. REDMON**
**INFORMATION SYSTEMS TECHNICIAN SECOND CLASS (E-5),**
**U.S. NAVY**

**NMCCA 201300077**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged**: 22 October 2012.
**Military Judge**: CAPT T.M. Carlos, JAGC, USN.
**Convening Authority**: Commander, Navy Region Europe, Africa, Southwest Asia, Naples, Italy.
**Staff Judge Advocate's Recommendation**: CDR J.A. Link, JAGC, USN.
**For Appellant**: LT Carrie E. Theis, JAGC, USN.
**For Appellee**: Maj Paul M. Ervasti, USMC; Maj David N. Roberts, USMC.

**26 June 2014**

---------------------------------------------------
**OPINION OF THE COURT**
---------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

MITCHELL, Chief Judge:

A panel of members with enlisted representation sitting as a general court-martial convicted the appellant, contrary to his pleas, of aggravated sexual assault and adultery in violation of Articles 120 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 934. The appellant was sentenced to 60 days confinement, reduction to pay grade E-1, forfeiture of all pay

Corrected Opinion Issued 16 July 2014

and allowances, and a dishonorable discharge.  The convening authority (CA) approved the sentence as adjudged, and except for the dishonorable discharge, ordered it executed.

In his five assignments of error, the appellant avers: (1) that the military judge abused his discretion by denying the defense motion to dismiss for selective prosecution; (2) that the application of Article 120(c), UCMJ, in this case violated his right to equal protection under the law; (3) that the element of substantial incapacitation is unconstitutionally vague as applied in the appellant's case; (4) that the evidence presented at trial was neither factually nor legally sufficient to support the conviction for a violation of Article 120(c), UCMJ; and, (5) that the military judge abused his discretion when he denied defense's motion to dismiss for unlawful command influence.

After careful examination of the record of trial and the pleadings of the parties, we are satisfied that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant occurred.  Arts. 59(a) and 66(c), UCMJ.

## Background

On 20 January 2012, Information Systems Technician Third Class (IT3) S[1] attended a farewell party for the appellant hosted by Information Systems Technician Second Class (IT2) MH. Earlier that evening, IT3 S went to dinner with a few friends during which she consumed multiple glasses of wine.  She then went back to her apartment where she consumed another alcoholic drink and shortly thereafter walked to the party with a shipmate, Information Systems Technician Seaman (ITSN) SC.  At the party, IT3 S continued drinking alcoholic beverages to include several beers, strong mixed drinks, "swigs" of Wild Turkey Bourbon Whiskey, and a significant quantity of a drink called FUBAR juice, which was described as a very intoxicating mix of alcohol.  Record at 1226.  The appellant was also drinking that night and consumed much of the same type of alcohol IT3 S did at the party.  Although the appellant was married, his wife and children had already left Italy for the United States and their next duty station.

---

[1] At the time of the sexual assault, the victim was an IT3 - she has since been promoted to IT2.  For purposes of this opinion, we refer to her as IT3, the pay grade she held at the time of the sexual assault.

2

The party ended somewhere around 0300 and IT3 S was intoxicated to the extent that she had difficulty walking. The appellant and others helped IT3 S back to her apartment, a 10-minute walk away. Once in her apartment, IT3 S undressed and sat on the floor of the shower with the water running over her for approximately 45 minutes. After ITSN SC experienced difficulty extracting IT3 S from the shower, the appellant assisted him in retrieving her from the shower and helping dress her. During the course of dressing her, IT3 S began to vomit in the toilet. After the appellant and ITSN SC managed to clothe IT3 S in sweatpants and a top they laid her down on a futon in the living room to go to sleep. The appellant later lay down next to her.

IT2 KA, who shared the apartment with IT3 S, stayed in the apartment that night with her boyfriend, IT3 LC, but left that morning at 0530 as she had to be at work by 0600. IT3 LC testified that before they left, he looked in on the appellant and IT3 S. He indicated that they were clothed and positioned on the futon as if they were "spooning," but he otherwise didn't see anything that gave him pause for concern as they both appeared to be asleep.

IT3 S indicated that after she fell asleep, the next thing she remembers is waking up, naked from the waist down, and the appellant on top of her, penetrating her vagina with his penis. IT3 S began to cry, pushed appellant aside, put on a pair of sweatpants, and went to sleep in her bed. Shortly thereafter, the appellant left and caught a ride with a friend, IT2 B, back to the appellant's barracks room. While in the appellant's barracks room, IT2 B noticed what appeared to be semen on the appellant's boxers when he changed clothes. Additional pertinent facts are provided as necessary to discuss the appellant's assignments of error.

## Selective Prosecution and a Violation of Equal Rights

On 21 January 2012, hours after the incident, IT3 S made an unrestricted report of sexual assault at the U.S. Naval Hospital, Naples, Italy and underwent a sexual assault forensic exam (SAFE). On 25 January 2012, the appellant was informed that he was suspected of violating Article 120, UCMJ, and apprised of his rights pursuant to Article 31(b), UCMJ, by the Naval Criminal Investigative Service (NCIS) Special Agent investigating the sexual assault allegation. On 10 February 2012, the appellant, via memorandum, advised his commanding officer that he wished to exercise his rights under Article

3

31(b), as explained to him by the NCIS investigating agent, and that he felt that he was the victim of sexual assault in this case. Appellate Exhibit XV, enclosure (6). IT3 S was not charged with sexual assault notwithstanding the appellant's allegation.

At trial, the defense moved to dismiss the charges against the appellant alleging that the CA engaged in selective prosecution. He argued that even though the evidence demonstrated that the appellant and IT3 S had approximately the same level of intoxication and that neither of them remembered the sexual encounter, it was the appellant who was the victim of sexual assault in this case and yet the CA was unwilling to prosecute IT3 S because she was female. This motion was denied by the military judge. Record at 75.

In his initial assignment of error, the appellant contends that the military judge erred by not dismissing the charges against him due to the CA engaging in selective prosecution. Closely related, in his second assignment of error the appellant contends the CA's decision to prosecute him and not IT3 S violated his right to equal protection under the Due Process Clause of the Fifth Amendment to the Constitution. We disagree with both contentions.

The Law

CAs have broad discretion in determining whom to prosecute *United States v. Brown,* 40 M.J. 625, 629 (N.M.C.M.R. 1994); *United States v. Kelly,* 40 M.J. 558, 570 (N.M.C.M.R. 1994). Unless presented with evidence to the contrary, we presume that CAs act without bias. The appellant has the burden of rebutting this presumption. To raise the issue of selective or discriminatory prosecution, an appellant bears the heavy burden of establishing, at least *prima facie:* (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the Government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights. *United States v. Garwood*, 20 M.J. 148, 154 (C.M.A. 1985). An appellant must show more than a mere possibility of selective prosecution; he must show discriminatory intent. *United States v. Brown*, 41 M.J. 504, 511 (Army Ct.Crim.App. 1994). In reviewing rulings by a military judge on a motion to dismiss for selective

4

prosecution, we review the findings of fact under a "clearly erroneous" standard, while we review the conclusions of law *de novo*. *See United States v. Johnson*, 54 M.J. 32, 34 (C.A.A.F. 2000).

Discussion

In denying the defense's motion to dismiss for selective prosecution, the military judge found as a matter of law that the appellant failed to establish a *prima facie* showing utilizing the *Garwood* test. We agree.

The evidence adduced from the NCIS investigation and provided to the CA indicated that when the party ended, the appellant had to assist IT3 S in getting home by carrying her part of the way. After they arrived at her apartment, the appellant assisted in getting her out of the shower and watched her vomit in the toilet. The appellant then assisted in getting her clothed and laid down next to her after he helped put her to bed. Prior to lying down with IT3 S, the appellant made comments to others like "I am fine" and that IT3 S was "like [his] little sister," suggesting that IT3 S would be safe with him. IT3 S awoke up to find the appellant on top of her penetrating her vagina with his penis. Mere hours after the sexual assault, IT3 S reported it to the U.S. Naval Hospital, Naples. It was weeks later, and only after being informed by NCIS that he was suspected of sexual assault, that the appellant claimed that he was the victim in this case.

We do not find that the appellant and IT3 S are "similarly situated" and that the appellant has been "singled out" for prosecution in this case. We additionally do not find evidence of bad faith on the part of the CA in bringing the appellant to trial. The information provided to the CA, to include the Article 32 Investigating Officer's report, the NCIS Investigative Report, and the staff judge advocate's Article 34 Advice memorandum, quite to the contrary, all suggest that the appellant was not the victim but rather the perpetrator of this sexual assault, and that the appropriate forum in which to dispose of the appellant's charges was at a general court-martial. We find this assignment of error to be without merit and therefore decline to grant relief.

We similarly find the appellant's second assignment of error alleging a Fifth Amendment violation to be without merit and not worthy of further comment.

5

**Constitutional Challenge to Article 120 as Applied**

In his third assignment of error, the appellant contends that the element of "substantial incapacitation" is unconstitutionally vague as applied to the appellant. The appellant specifically avers that Article 120 (c), UCMJ, is unconstitutionally vague because "[t]he law cannot be understood by the common man or those who prosecute it" and it is unclear "what factors satisfy the element of substantial incapacitation" in this case. Appellant's Brief of 22 Jul 2013 at 20.

The Law

A basic principle of due process requires "fair notice" that an act is subject to criminal sanction and the standard that is applicable to the forbidden conduct. *United States v. Vaughan*, 58 M.J. 29, 31 (C.A.A.F. 2003). A law is "void for vagueness" if "'one could not reasonably understand that his contemplated conduct is proscribed.'" *Id.* (quoting *Parker v. Levy*, 417 U.S. 733, 757 (1974)). The sufficiency of statutory notice is determined in the light of the conduct with which a defendant is charged. *Levy*, 417 U.S. at 757. "Criminal statutes are presumed constitutionally valid, and the party attacking the constitutionality of a statute has the burden of proving otherwise." *United States v. Mansfield*, 33 M.J. 972, 989 (A.F.C.M.R. 1991) (citation omitted), *aff'd*, 38 M.J. 415 (C.M.A. 1993).

Standard of Review

We review whether a statute is unconstitutional as applied *de novo*. *United States v. Ali*, 71 M.J. 256, 265 (C.A.A.F. 2012). However, at trial, the appellant did not object to the constitutionality of Article 120(c), UCMJ, as applied to his case. Since the error the appellant is alleging is constitutional, and in light of the Court of Appeals for the Armed Forces presumption against waiver of constitutional rights and the requirement that waiver "'clearly establish[] . . . an intentional relinquishment of a known right or privilege,'" we consider the alleged error forfeited and not waived. *United States v. Sweeney,* 70 M.J. 296, 303-04 (C.A.A.F. 2011) (quoting *United States v. Harcrow*, 66 M.J. 154, 157 (C.A.A.F. 2008). We therefore test for plain error. *Id.* at 304.

Under plain error review, we will grant relief only where: (1) there was error, (2) the error was plain and obvious, and (3) the error materially prejudiced a substantial right of the

appellant.  *Id*.  To determine if "a statute is 'unconstitutional as applied,' we conduct a fact-specific inquiry."  *Id*. (footnote and citations omitted).

Analysis and Discussion

The appellant was charged with violating Article 120(c), UCMJ, specifically alleging that he had sexual intercourse with IT3 S, who was substantially incapacitated.  Aggravated sexual assault, under Article 120(c)(2), is committed when a person "engages in a sexual act with another person of any age if that other person is substantially incapacitated or substantially incapable of: (A) appraising the nature of the sexual act; (B) declining participation in the sexual act; or (C) communicating unwillingness to engage in the sexual act . . . ."

After consultation with its expert, the defense was informed that, based upon the amount and types of alcohol IT3 S and other witnesses indicated that she consumed, the expert was of the opinion that IT3 S was in a "blacked out" vice "passed out" stage of intoxication at the time of the sex act.  While the defense expert could definitively state that a person in a "passed out" stage of intoxication would be "substantially incapacitated" and not capable of consent, she could not so definitively state such when the person was in a "blacked out" stage.  After receiving this information, the defense served the Government with a motion for appropriate relief in the form of a bill of particulars requesting the Government to define what the term "substantially incapacitated" meant in regards to the appellant's charged misconduct.  AE XXXV.  After the Government counsel denied this request, the defense filed the same motion with the court and it was ultimately denied by the military judge.  Record at 322.  The appellant now contends that he was denied due process of law as guaranteed by the Fifth Amendment because he was not given fair notice that his misconduct was forbidden due to the vagueness of the statute.  We disagree.

At an Article 39(a), UCMJ, session to hear the defense's motion for appropriate relief, the defense indicated that the defense team was in possession of the military judge's proposed member's instructions that included the definition of substantial incapacitation.  The military judge stated:

> I mean you have the definition of substantially
> incapacitated, right, that I've given out and it's
> been a standard of my instructions on for every single
> one of the substantially incapacitated case (sic) . .

7

. . It's a level of mental impairment due to the consumption of alcohol while asleep or unconscious which rendered the alleged victim unable to appraise the nature of the sexual conduct at issue, unable to physically communicate unwillingness to engage in the sexual conduct or otherwise unable to make or communicate a competent decision.

*Id.* at 321-22.

That definition was contained in the Judge's Benchbook prior to his trial and the military judge advised the defense he intended to give that instruction to the members. After this disclosure by the military judge, the defense did not state that it was surprised or unprepared to defend against this possibility, nor did the defense team request additional time to prepare. The appellant clearly knew and understood the legal theory on which he was prosecuted: that he had committed a sex act (sexual intercourse) upon IT3 S and that he did so while she was substantially incapacitated — while she was asleep or unconscious.

Under these circumstances, the appellant's due process rights were not violated because he was on notice of what he needed to defend against throughout his court-martial. *United States v. Wilkins*, 71 M.J. 410, 414 (C.A.A.F. 2012). Accordingly, we find no error by the trial court and conclude that this assignment of error is without merit.

## Legal and Factual Sufficiency

In his fourth assignment of error, the appellant avers that the finding of guilty on the charge of sexual assault is legally and factually insufficient. We disagree.

<u>The Law</u>

The test for legal sufficiency is whether, considering the evidence in the light most favorable to the Government, any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987); *United States v. Reed*, 51 M.J. 559, 561-62 (N.M.Crim.Ct.App. 1999), *aff'd*, 54 M.J. 37 (C.A.A.F. 2000); *see also* Art. 66(c), UCMJ. The test for factual sufficiency is whether, after weighing all the evidence in the record of trial and recognizing that we did not see or hear the witnesses, this

court is convinced of the appellant's guilt beyond a reasonable doubt. *Turner*, 25 M.J. at 325; *see also* Art. 66(c).

Analysis

There are two elements to the offense of aggravated sexual assault that the Government was required to prove beyond a reasonable doubt: (1) that the accused engaged in a sexual act with the IT3 S; and (2) that IT3 S was substantially incapacitated. MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), Appendix 28, ¶ 45b(3)(c).

There is little dispute, if any, as to whether the appellant engaged in a sex act with IT3 S. IT3 S testified that after she went to sleep, she was awakened by the appellant on top of her with his penis inside of her vagina. The SAFE revealed the presence of semen in IT3 S's vagina which matched the deoxyribonucleic acid (DNA) of the appellant. While the appellant claims he does not remember the event, he stated during an NCIS recorded phone call with IT3 S that a sexual act must have occurred as both of them were naked from the waist down. The only element in issue is whether IT3 S was substantially incapacitated.

In presenting its case in chief, the Government called multiple witnesses who described the different types and quantities of alcoholic beverages they saw IT3 S consume as well as the fact that, as a result of her heavy drinking, her speech was slurred; she was having difficulty walking; and she was incoherent and vomiting. The Government also called Colonel (COL) Timothy Lyons, U.S. Army, Chief of Forensic Toxicology Division, Armed Forces Medical Examiner, who the military judge recognized as an expert in the field of forensic toxicology. After listening to the witnesses and based on the amount and types of alcohol they said IT3 S consumed, COL Lyons stated that he would have put her blood alcohol content (BAC) between .19 and .22. Record at 854. When questioned as to the incapacitation of IT3 S, the following colloquy occurred between the trial counsel and the Government's forensic expert:

> TC: Am I correct in saying that when it comes to actually establishing whether someone was, as we would say in the legal world, substantially incapacitated, you can't categorically say that for any particular case?
> A: It's not a toxicology question. That's a legal question.

9

TC: Precisely, sir, but what is it that you can do in cases like this?
A: And I hinted to it – I mean ---let me clarify that. If an individual has a BAC that I think would put them in a range where they're unconscious or were unresponsive, then I would be safe in saying "I don't think that individual had the capacity to consent." Okay?  That I am willing to do.  However, in a case like this where the BAC is lower than that, all I can state scientifically, is that the BAC that I estimated is consistent with the witness statements that I heard in court yesterday as far as her condition mentally and physically and that my BAC is the manifestations or the symptoms that I would associate with the BAC I estimated are in line or consistent with the statements that I heard and that this individual that I would expect to be impaired and incapacitated and have trouble, you know, with memory definitely, potentially incoherent, potentially confused of her surroundings and that's basically what I gleaned from the statements that I heard yesterday.  So that's what I am willing to say.

*Id.* at 869-70.

Additionally, the objective evidence adduced at trial also shows that IT3 S was significantly more affected by alcohol that night than the appellant and that semen matching the DNA of the appellant was found in IT3 S's vagina.  As appellant indicated that he called a friend and left IT3 S's apartment at approximately 0600 or 0615, the sexual assault therefore occurred shortly after IT3 LC and IT2 KA left the appellant alone in the apartment with IT3 S.

Given these facts that were before the members, we have little difficulty finding that the members had a factual basis to find the appellant guilty beyond a reasonable doubt.  On balance, and with due regard for the fact that we did not observe the witnesses, we too are convinced of the appellant's guilt beyond a reasonable doubt.  We find this assignment of error to be without merit.

## Unlawful Command Influence

In his final assignment of error, the appellant contends that the military judge erred in denying the defense's motion to dismiss the case due to unlawful command influence.

10

<u>The Law</u>

"Congress and this court are concerned not only with eliminating actual unlawful command influence, but also with 'eliminating even the appearance of unlawful command influence at courts-martial.'" *United States v. Lewis*, 63 M.J. 405, 415 (C.A.A.F. 2006) (quoting *United States v. Rosser*, 6 M.J. 267, 271 (C.M.A. 1979)).  An accused has the initial burden of raising the issue of unlawful command influence. *United States v. Stombaugh*, 40 M.J. 208, 213 (C.M.A. 1994).  The defense must "show facts that, if true, constitute unlawful command influence, and that the alleged unlawful command influence has a logical connection to the court-martial, in terms of its potential to cause unfairness in the proceedings." *United States v. Biagase*, 50 M.J. 143, 150 (C.A.A.F. 1999) (citations omitted).  The quantum of evidence necessary to raise the specter of unlawful command influence is "'some evidence.'" *Biagase*, 50 M.J. at 150 (quoting *United States v. Ayala*, 43 M.J. 296, 300 (C.A.A.F. 1995)).  The burden of disproving the existence of unlawful command influence or proving that it will not affect the proceeding does not shift until the defense meets its burden of production.

<u>Analysis and Discussion</u>

Allegations of unlawful command influence are reviewed *de novo*. *United States v. Harvey*, 64 M.J. 13, 19 (C.A.A.F. 2006); *United States v. Villareal*, 52 M.J. 27, 30 (C.A.A.F. 1999); *United States v. Wallace*, 39 M.J. 284, 286 (C.M.A. 1994).  We necessarily begin our analysis by determining whether the defense met its initial burden of providing "some evidence" necessary to make a colorable showing of unlawful command influence.

In the appellant's case, the charges were preferred on 10 April 2012; the defense received the request for counsel and the charge sheet at 1711 hours that same day.  The appellant's defense counsel were detailed on 11 April with the Article 32 hearing scheduled for 19 April 2012.  The defense requested a continuance and the Article 32 was rescheduled for 30 April 2012.  The appellant filed a timely motion with the trial court arguing that his commanding officer exerted unlawful command influence over the judicial process by so quickly convening an Article 32 Investigation thus creating the appearance of unlawful command influence. *See* AE XIX.  After considering the motion, the military judge concluded that the defense had presented insufficient evidence of unlawful command influence to

11

warrant shifting the burden of proof to the Government on the issue and, alternatively, he was convinced beyond a reasonable doubt that the charges against the appellant were free from actual or apparent unlawful command influence.  AE XXII.

We too conclude that the appellant has failed to meet its initial burden to provide "some evidence" of facts which, if true, constitute unlawful command influence.  His claims regarding the special court-martial CA's quest to have the Article 32 completed in an expeditious manner does not give rise to unlawful command influence.  Mere speculation that unlawful command influence occurred because of a specific set of circumstances is not sufficient. *United States v. Ashby*, 68 M.J. 108, 128 (C.A.A.F. 2009).  The appellant has failed to show that his commanding officer's interest in conducting the Article 32 in an expeditious manner was anything other than proper, official, and command prerogative.

## Conclusion

The findings and the sentence are affirmed as approved by the CA.

Judge FISCHER and Judge JAMISON concur.

For the Court

R.H. TROIDL
Clerk of Court

12