# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
HAIGHT, PENLAND, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant JASON R. CREWS**
**United States Army, Appellant**

ARMY 20130766

Headquarters, 1st Infantry Division and Fort Riley
Gregory A. Gross, Military Judge
Lieutenant Colonel John A. Hamner, Staff Judge Advocate (pretrial)
Colonel Craig E. Merutka, Staff Judge Advocate (post-trial)

For Appellant: Captain Matthew L. Jalandoni, JA (argued); Colonel Kevin Boyle, JA; Major Yolanda McCray Jones, JA; Captain Patrick J. Scudieri, JA (on brief); Colonel Mary J. Bradley, JA; Major Christopher D. Coleman, JA; Captain Patrick J. Scudieri, JA (on brief on specified issue).

For Appellee: Captain Timothy C. Donahue, JA (argued); Major Daniel D. Derner, JA; Captain James P. Curtin, JA (on brief); Colonel Mark H. Sydenham, JA; Major Daniel D. Derner, JA; Captain Timothy C. Donahue, JA (on brief on specified issue).

29 February 2016

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WOLFE, Judge:

A panel composed of officer and enlisted members sitting as a general court-martial convicted appellant, contrary to his pleas, of indecent exposure (as a lesser-included offense of indecent acts) and sexual abuse of a child (as a lesser-included offense of rape of a child), in violation of Articles 120 and 120b, Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 920b (2006 & Supp. IV; 2012) [hereinafter UCMJ]. Appellant was arraigned on charges that included one specification of rape of a child (KG) under the age of 12 years, and one specification of indecent acts in

the presence of Mrs. SG.[1]  The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for one year, forfeiture of all pay and allowances, and reduction to the grade of E-1.

Appellant's case is now before this court for review pursuant to Article 66(c), UCMJ.  Appellant assigns two errors, both of which merit discussion, and one of which merits relief.  Specifically, we find the evidence supporting appellant's conviction for sexual abuse of a child to be factually insufficient.

## BACKGROUND

The facts surrounding this case all took place in 2012 in a neighborhood of family housing at Fort Riley, Kansas.  While not strictly neighbors, appellant, KG, and Mrs. SG all lived within a few minutes' drive of each other.  KG is the five-year-old daughter of an Army specialist who served in the same company as appellant.  Appellant, however, did not have any supervisory relationship or responsibilities over KG's father.  Mrs. SG was the wife of an Army soldier.  Mrs. SG and KG are not related and lived in separate homes in the neighborhood.

## DISCUSSION

### A. Factual Sufficiency of Sexual Abuse of a Child

Appellant visited KG's house often.  KG's mother testified that appellant stopped by nearly every workday during his lunch break for a brief visit, and often on weekends.  During these visits, KG would ask appellant for piggyback rides, and crawl over him while he was on the floor.  KG's mother testified that several times appellant volunteered to babysit KG, which she and her husband declined.  Appellant was also very gracious with helping around the house, to include changing the brakes and oil on the family car, fixing the dryer, and assisting with an intra-post move to a one-story house necessitated by a back injury to KG's father.

KG had an electronic toy which in addition to playing math and reading games allowed the user to take short 30-second videos.  In October of 2012, KG's mother was looking at the toy when she saw a video of appellant and KG that she found disturbing.  She asked KG if anyone had ever done anything inappropriate with her.  KG answered yes, and indicated that appellant had touched her genitals.  During a subsequent child forensic interview, KG stated that appellant had touched her genitals and penetrated her vagina.

---

[1] A third charge of indecent language was dismissed after arraignment.

At trial, the government attempted to prove their case that appellant raped KG through the admission of the video and the testimony of KG, KG's mother, and the boy who filmed the video, DH. We will discuss each at length.

## 1. Facts

### a) Testimony of KG's Mother

KG's mother was the government's first witness. She provided background information and the history of interactions between appellant and KG. Most crucially, she also testified to her daughter's statement that appellant had inappropriately touched KG's genitals. Her key testimony was as follows:

> Q [TC]: Has anything between your family and Sergeant Crews changed that relationship?
>
> A: The instant [sic] that happened with our daughter.
>
> Q: Can you tell the panel members a little bit about that?
>
> A: It was one September evening, my friend has just gotten back from her grandmother's funeral. So we had a little barbeque and [appellant] was also over there with us, and we were just -- all the adults were outside and the kids were playing in [KG's] bedroom. And my daughter had one of those Leap Frogs that records videos and stuff. And I actually didn't notice it until October, but I was watching the video and it was actually recorded with [appellant] sitting on the edge of my daughter's bed with her completely covered underneath the jacket sitting on his lap, and that is when I discovered it. And I went and told my husband about it because he was in the bathroom -- and our daughter was in the living room when I discussed it with him; and I had walked back into the living room to ask her if anybody had done anything that she thought was wrong, and she shook her head yes; and I asked her, "Who?" I never said any name, but she said, "Sergeant Crews," and I asked her, "What did he do?" and she doesn't know the term names for her body parts because she is only six, but I asked her can -- I said, "Can you show me where he touched you?" and she proceeded to move the blanket and pointed down to her vaginal area, and that is how I discovered what had happened in her bedroom.

KG's mother further clarified that she discovered the video about a month and a half after it was taken. The defense did not object to KG's mother's testimony as hearsay or otherwise. The record provides no basis to believe that a plausible hearsay exception would have applied.[2]

### b) The Video

The video, which was admitted over defense objection, is somewhat grainy.[3] Additionally, the video's camerawork reflects the fact that the video was taken by KG's friend, DH, a six-year-old neighborhood boy.

At the outset of the 30-second video, appellant is seen sitting on the edge of KG's bed. KG is sitting on appellant's lap and has a large adult jacket wrapped around her midsection and waist. Approximately halfway through the video, KG pulls the jacket over her head while appellant embraces KG by the waist with his left arm, which remains above the jacket. However, appellant then places his hand beneath the jacket, although his upper arm, elbow, and parts of his forearm remain visible. The angle of his forearm makes it possible that appellant has placed his hand near either KG's stomach or pelvic area. The video ends a few seconds later.

### c) Testimony of KG

At trial KG's mother generally testified consistently with her initial statement to investigators and her testimony at the Article 32, UCMJ, investigation. KG, however, did not. While KG answered some initial background questions, such as the name of her dog, her answer to every question of substance on direct exam was "I don't know."[4]

---

[2] We note of course that as there was no objection, the government did not attempt to lay down a foundation for a hearsay exception. Our review of the record, to include the criminal investigation, Article 32, UCMJ, investigation, and other allied papers attached to the record under Rule for Courts-Martial [hereinafter R.C.M.] 1103, does not reveal any indication of an applicable exception, such as an excited utterance.

[3] Testimony at trial revealed that a technician was unable to digitally copy the video. Instead the copy presented at trial was made by filming the screen of the video player.

[4] The record does not indicate any request for remote live testimony under R.C.M. 914A, or any other accommodation to assist a six-year-old testifying about a difficult subject. Nor was there any attempt by the trial counsel to declare KG unavailable and admit her testimony at the Article 32 investigation. *See* Mil. R. Evid. 804(a)(3).

d) Testimony of DH

Finally, the government called DH, the boy who recorded the video. DH's direct testimony, at least when reduced to a written transcript, could generously be described as muddled. It appears that DH, who the government relied on in authenticating the video, hadn't seen the video at any time between when it was first filmed and when it was played in court. DH at times appears to testify about videos he made which were not admitted into evidence. When recounting a conversation he had with his mother (where he told his mother that KG "got touched in the private") he appears to confuse counsel's questions about where he was when he was talking to his mother, and where he was when KG was touched. DH testified he saw KG get touched, and immediately thereafter said he did not see it. In short, it is not possible to make any sense of DH's testimony one way or the other with respect to the charged misconduct he was called to testify about.

e) The Defense Case

The defense case-in-chief consisted of several witnesses. The first, a child psychologist, testified as an expert witness about child memories. The defense also called several character witnesses who had daughters the same age as KG. After laying the foundation that appellant also spent a lot of time playing with their kids, they testified that they had high opinions of appellant's "character towards children"[5] and that he was helpful.

**2. Law**

On appeal, appellant claims that the evidence of child sexual abuse is factually insufficient to support the conviction. In response, the government argues that KG's hearsay statement to her mother, in light of the video, is sufficient.[6]

---

[5] The testimony was admitted without objection and it is not necessary for us to address whether this was testimony about the appellant's *behavior* around children, or whether it was a pertinent character trait and admissible under Mil. R. Evid. 404(a)(1).

[6] The government's brief argued only that the evidence was legally sufficient. That is, the government argued that "[w]hen viewed in a light most favorable to the government, there was sufficient evidence for a rational fact finder to find beyond a reasonable doubt that appellant sexually abused a child under the age of twelve." At oral argument, the government made clear that the position of the United States was that the evidence was both legally and factually sufficient.

Nonetheless, we have the independent duty to review the record to determine whether it is correct in law *and* fact. UCMJ art. 66(c). The test for legal sufficiency is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, (1979); *see also United States v. Phillips,* 70 M.J. 161, 166 (C.A.A.F. 2011). The test for factual sufficiency, on the other hand, "involves a fresh, impartial look at the evidence, giving no deference to the decision of the trial court on factual sufficiency beyond the admonition in Article 66(c), UCMJ, to take into account the fact that the trial court saw and heard the witnesses." *United States v. Washington,* 57 M.J. 394, 399 (C.A.A.F. 2002). In exercising this authority this court gives no deference to the *decisions* of the trial court (such as a finding of guilty), but does recognize the trial court's superior ability to see and hear the witnesses. *Id.* (A court of criminal appeals gives "no deference to the decision of the trial court" but is required to adhere to the admonition to take into account the fact that the trial court saw and heard the witnesses).

In reviewing for factual sufficiency we are limited to the facts introduced at trial and considered by the court-martial. *United States v. Beatty*, 64 M.J. 456 (C.A.A.F. 2007). Thus, for example, we do not consider KG's unadmitted pretrial statements, no matter how compelling, in determining whether there was sufficient evidence to support the findings. We may affirm a conviction only if we conclude, as a matter of factual sufficiency, that the evidence proves appellant's guilt beyond a reasonable doubt. *United States v. Sills,* 56 M.J. 239, 240–41 (C.A.A.F. 2002); *United States v. Turner,* 25 M.J. 324, 324–25 (C.M.A. 1987).

Our superior court does not share either our factual review authority or responsibility. *Compare* Article 66 *with* Article 67, UCMJ. Nonetheless, our decisions are subject to review by the United States Court of Appeals for the Armed Forces (C.A.A.F.). *United States v. Nerad*, 69 M.J. 138, 140 (C.A.A.F. 2010) ("[W]hile CCAs have broad authority under Article 66(c), UCMJ, to disapprove a finding, that authority is not unfettered. It must be exercised in the context of legal—not equitable—standards, subject to appellate review.").

### 3. Analysis

This case, somewhat uniquely, raises the degree to which we recognize the trial court's superior position in seeing and hearing the evidence. Accordingly, and as we find the evidence factually insufficient, we believe it wise to discuss how we arrive at our conclusion in light of these considerations.

The deference given to the trial court's ability to see and hear the witnesses and evidence—or "recogni[tion]" as phrased in Article 66, UCMJ—reflects an appreciation that much is lost when the testimony of live witnesses is converted into the plain text of a trial transcript. While court-reporter notes may sometimes reflect

a witness's gesture, laugh, or tearful response, they do not attempt to reflect the pauses, intonation, defensiveness, surprise, calm reflection, or deception that is often apparent to those present at the court-martial. A panel hears not only a witness's answer, but may also *observe* the witness as he or she responds. For instance, a transcript may state "I am showing the witness prosecution exhibit 13 for identification" but will leave unstated the witness's demeanor—whether surprise, recognition, or dread, when reviewing or confronted with evidence.

To say that an appellate court is at a relative disadvantage in determining questions of fact as compared to a trial court is to state the obvious. In New York State—the only other jurisdiction we are aware of where the intermediate appellate court conducts a review for factual sufficiency—the intermediate appellate court gives "[g]*reat deference* . . . to the fact-finder's opportunity to view the witnesses, hear the testimony and observe demeanor." *People v. Romero*, 7 N.Y.3d 633, 644 (2006) (emphasis added) (quoting *People v. Bleakley*, 69 N.Y.2d 490, 495 (1987)). However, neither this court, nor our superior court, has quite so clearly delineated the amount of deference due the trial court when conducting a factual sufficiency review.

In *United States v. Johnson,* 30, M.J. 930, 934 (A.C.M.R. 1990), we distinguished between evidence whose weight depended on the factfinder's assessment of credibility, and evidence where the appellate court was at little or no disadvantage in reviewing the evidence.[7] Similarly, and more recently, in *United States v. Davis*, 75 M.J. 537, 546 (Army Ct. Crim. App. 2015) (en banc), we noted that "the degree to which we 'recognize' or give deference to the trial court's ability to see and hear the witnesses will often depend on the degree to which the credibility of the witnesses is at issue."

As related above, the government sought to introduce four substantive components of evidence to support the conviction involving KG: First, KG's mother testified that KG had told her that appellant had touched her sexually; second, a

---

[7] In *Johnson* we stated that Article 66(c), UCMJ, "cautions us to bear in mind that 'the trial court saw and heard the witnesses.' Thus, in cases where witness credibility plays a critical role in the outcome of the trial, we hesitate to second-guess the court's findings." 30 M.J. at 934 (citation omitted). This was inartfully stated as it is our duty to "second-guess" a court-martial's findings and we do not hesitate in this duty. However, the underlying concept—that more deference is due when credibility is key to determining the weight of evidence—remains sound. We went on to say in *Johnson*, for example, that when the evidence does not depend on credibility determinations, "our independence as a fact-finder should only be constrained by the evidence of record and the logical inferences emanating therefrom." *Id.*

video, that while certainly concerning, does not explicitly depict any sexual touching; third, the government's attempt to present testimony by the alleged victim, KG; and fourth, the testimony of DH, who stated both that he saw and didn't see appellant touch KG's "privates."

With regards to the video, our ability to review the evidence and assign it proper weight is nearly identical to that of the panel members.[8] The record of trial contains the same digital copy of the video that was played for the members. It is what it is. While the video was relevant evidence that explains how the allegations came to light, as well as demonstrating opportunity, the video does not explicitly depict a sexual assault.

While we give little or no deference to the trial court's weighing of a video, the testimony of the two child witnesses falls on the other side of the spectrum. Children sometimes testify with shocking candor, but may also be easily manipulated on the stand. A dry transcript will contain some of these elements, but the trial court is *far* better positioned to determine the appropriate weight such testimony should be given.

Nonetheless, the testimony of the two child eyewitnesses does not support the court-martial's findings. KG's testimony of "I don't know" can be interpreted in two ways: first, as some evidence that the assault did not happen; or second, that she was essentially refusing to answer any questions. Neither interpretation provides evidence of appellant's guilt. Similarly, it is hard to draw any inferences, one way or the other, from DH's internally contradictory testimony. Even applying the "great deference" standard employed by New York intermediate appellate courts, *see, e.g. Romero*, 7 N.Y.3d at 644, the testimony of the two children in this case does not weigh in favor of appellant's guilt.[9]

Accordingly, the only evidence of weight of appellant's guilt is the testimony of KG's mother. As discussed above, KG's mother had no firsthand evidence of the offense. Rather, the inculpatory evidence consisted of repeating KG's statements that appellant had touched her inappropriately. While these unobjected-to hearsay statements were admitted for their truth—and we consider them as such—the lack of an applicable hearsay exception is concerning. Additionally, as recounted at trial, the key statement by KG was in response to a leading question from her mother.

---

[8] We say "nearly identical" for two reasons. First, the panel members had the ability to observe the witness's reaction when the video was played in court. Second, the admonition that we recognize the panel's ability to see and hear the witnesses applies not only to credibility determinations, but also to "weigh[ing] the evidence." UCMJ art. 66(c).

[9] In its brief the government does not rely on either child's testimony in arguing in favor of affirmance.

After KG indicated that appellant had done something wrong, her mother asked "can you show me where he touched you" which presupposed that an inappropriate touch was the "something wrong."

Having reviewed the entire record, we are not convinced beyond a reasonable doubt that appellant committed the offense of sexual abuse of a child. The evidence in this case did not "exclude every fair and reasonable hypothesis of the evidence except that of guilt." Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook [hereinafter Benchbook], para. 8-3 (10 Sept. 2014). Accordingly, we will set aside the finding of guilty in our decretal paragraph.

*B. Indecent Exposure*

During the course of appellant's friendship with KG's family, he was also introduced to Mrs. SG. Mrs. SG was an adult woman also living in family housing on Fort Riley. Appellant would stop by and talk to Mrs. SG while she was sitting outside on her porch. At trial, however, one instance stood out in her mind.

Mrs. SG stated she was sitting on her porch talking with appellant. She stated it was a perfectly normal conversation, until it suddenly wasn't. Specifically, she testified it got awkward when appellant unbuttoned his ACU pants, took out his penis, and began "messing" with himself by stroking his penis. Mrs. SG estimated this went on for twenty minutes while she tried to ignore what appellant was doing and concentrated on her laptop. She stated she discussed this event with her husband that night but decided not to report the incident as it did not happen again.

Prior to instructing the members on findings, the military judge conducted an Article 39(a), UCMJ, session to discuss instructions. Specifically, the military judge addressed whether indecent exposure was a lesser-included offense of indecent acts:

> MJ: Now regarding Charge II and its Specification as I
> mentioned in the 802 conference this morning I saw one
> lesser include [sic] of indecent exposure; does either side
> want to be heard on that?
>
> DC: No, Your Honor.

At the end of the Article 39(a), UCMJ, session, and again at several more instances during the remainder of the trial, the defense did not object to the military judge's proposed instruction on the lesser-included offense.[10] After being notified

---

[10] The maximum authorized punishment for an indecent act includes up to five years

of the issue first at a R.C.M. 802 conference, and later at the Article 39(a), UCMJ, session, the defense chose not to object to the instruction on the lesser-included offense.

We find that this amounted to an affirmative waiver of the matter.

> "Deviation from a legal rule is 'error' unless the rule has been waived." *United States v. Olano*, 507 U.S. 725, 732–33, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993). Waiver is the "intentional relinquishment or abandonment of a known right." *United States v. Harcrow*, 66 M.J. 154, 156 (C.A.A.F. 2008) (quoting *United States v. Olano,* 507 U.S. 725, 732–33, 113 S. Ct. 1770, 123 L. Ed.2d 508 (1993)). "Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake." *Id.* (quoting *Olano*, 507 U.S. at 733).

*United States v. Girouard*, 70 M.J. 5, 10 (C.A.A.F. 2011). In *Girouard,* the court found that waiver was not present, because (unlike this case), the case law governing what constituted a lesser-included offense had changed between trial and appeal. That is, the defense counsel in *Girouard* did not intentionally relinquish a known right, as the right had not yet been clearly identified in *United States v. Jones*, 68 M.J. 465 (C.A.A.F. 2010). The present case was tried well after *Jones.* Here, the military judge specifically notified the defense that he intended to instruct on the lesser-included offense of indecent exposure, and the defense declined the military judge's invitation to be heard on the matter. Moreover, the defense was provided a copy of the written instructions to review, and heard the instructions given to the panel. In each instance, the elements of the two offenses in question were laid out one after the other without objection. Under the circumstances of this case, this constituted waiver.

Even assuming that an objection to the instruction on the lesser-included offense of indecent exposure was not affirmatively waived, the failure to object to the instructions forfeited the objection, absent plain error. R.C.M. 920(f); *United States v. Tunstall*, 72 M.J. 191, 193 (C.A.A.F. 2013); *see also United States v.*

---

of confinement. *See Manual for Courts-Martial, United States* (2008 ed.) [hereinafter *MCM*, 2008 ed.] pt. IV, ¶ 45.f.(6). The maximum authorized punishment for indecent exposure includes up to one year of confinement. *MCM*, 2008 ed. at ¶ 45.f.(7). That is, a conviction on indecent exposure reduced the possible confinement that could be adjudged for that offense by 80%.

10

*Wilkins,* 71 M.J. 410, 412 (C.A.A.F. 2012) (citing *United States v. Arriaga,* 70 M.J. 51, 54 (C.A.A.F. 2011)); *Davis*, 75 M.J. 537.

"Under a plain error analysis, [an appellant] 'has the burden of demonstrating that: (1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of the accused.'" *Tunstall*, 72 M.J. at 193-94 (quoting *Girouard,* 70 M.J. at 11).

Applying the elements test, appellant claims that the military judge committed error as an "indecent act does not require proof of an additional element not found in the instruction for indecent exposure" and that "proof of indecent exposure requires proof that the exposure was intentional and that it was made at a place where the conduct could reasonably be expected to be viewed by people other than members of the accused's family or household."

We first note that a reasonable panel could have credited the testimony that appellant pulled out and exposed his penis on Mrs. SG's front porch, but not credited the testimony that he then stroked his penis for twenty minutes while she continued to work on her computer. That is, the panel could have credited the evidence supporting the *exposure*, while not crediting the *act* of masturbation.

We also note that the element of indecent exposure that requires the conduct to occur somewhere other than in front of his own family or household serves as a limitation on what conduct is indecent. That is, being seen naked by your own family—while an "exposure"—is not an indecent exposure. Appellant was charged with exposing his penis to Mrs. SG, a person he clearly knew not to be a member of his family. Moreover, as charged, the specification alleged that appellant pulled out his penis and stroked it on the front porch of Mrs. SG. That is, as charged, appellant's exposure of his penis was an intentional act, committed in public; it was not an accidental or negligent exposure or an exposure in front of his family.

When it comes to unpreserved error, the burden is on the appellant to establish prejudice. *Wilkins*, 71 M.J. at 413; *United States v. Humphries*, 71 M.J. 209, 217 n.10. "Appellant bears the burden of proving prejudice because he did not object at trial. Appellant must show 'that under the totality of the circumstances in this case, the Government's error . . . resulted in material prejudice to [his] substantial, constitutional right to notice.'" *Wilkins*, 71 M.J. at 413 (alterations in original) (quoting *Humphries*, 71 M.J. at 215) (internal citation omitted).

In *Wilkins* the United States Court of Appeals for the Armed Forces (C.A.A.F.) found that the military judge committed error by instructing the panel on abusive sexual contact as a lesser-included offense of aggravated sexual assault based on how the offense was charged. However, as the appellant had not objected at trial, the C.A.A.F. tested for plain error. The C.A.A.F. found that the appellant was "on notice of all of the elements he had to defend against." *Wilkins*, 71 M.J. at

414. Additionally, the lesser-included offense did not change the defense's strategy at trial. *Id.* Thus while finding error, and finding that it was plain and obvious, the court affirmed the findings as the appellant in *Wilkins* did not carry his burden of demonstrating a material prejudice to a substantial right. *Id.* at 413 ("Appellant has not met this burden because he cannot establish prejudice to his ability to defend against the charge he was convicted of or his right to notice."). *Cf. United States v. Riggins*, 75 M.J. 78, 85 (C.A.A.F. 2016) (preserved constitutional error reviewed for harmlessness beyond a reasonable doubt).

In the present case, appellant does not even attempt to meet his burden. While appellant's brief identifies that plain error is the appropriate test, the brief addresses only the first prong of the plain error test, and does not address whether the error was plain or obvious, and if so, how the error resulted in a material prejudice to a substantial right of appellant. Accordingly, appellant has failed to meet his burden and is not entitled to relief. Even if we were to attempt to meet appellant's burden for him regarding the plain and obvious nature of the error, we find that as in *Wilkins*, the instruction on the lesser-included offense did not deprive appellant of notice regarding what he was defending against or alter his trial strategy. The defense in this case did not hinge on whether appellant's actions were an exposure or an indecent act. Rather, the defense's case claimed that the charged misconduct simply never happened, a theory that applies with equal force to both indecent acts and indecent exposure.

Finally, setting aside whether appellant waived, forfeited, or met his plain error burden in this case, we find that this issue is controlled by our superior court's decision in *United States v. Rauscher*, 71 M.J. 225 (C.A.A.F. 2012). In that case, the appellant was charged with assault with intent to commit murder (a violation of Article 134), but convicted of the lesser-included offense of aggravated assault with a dangerous weapon or means likely to cause death or grievous bodily harm (a violation of Article 128). *Id.* In a per curiam opinion, our superior court never addressed the elements test to determine whether aggravated assault is a lesser-included offense of assault with intent to commit murder. Rather, the C.A.A.F. looked at the words of the specification which alleged that the appellant committed "an assault . . . by stabbing [the victim] in the hand and chest with a knife." *Id.* at 226. *Id.* The court was "convinced that the specification clearly allege[d] every element of [aggravated assault]." *Id.* That is, an elements test is unnecessary if the specification itself alleges the lesser-included offense in question.

In this case, the specification alleged that appellant did "wrongfully commit indecent conduct, to wit: pulling his penis out and openly stroking it with his hand in the presence of [SG]." One commits indecent exposure when one "intentionally exposes, in an indecent manner, the genitalia . . . ." *MCM*, 2008 ed. at ¶ 45.a.(n). As every element of indecent exposure was contained in the specification, appellant was on notice that he was charged with indecent exposure. *Jones*, 68 M.J. at 472

("The charge sheet itself gives content to that general language, thus providing the required notice of what an accused must defend against.").

## CONCLUSION

The finding of guilt to the Specification of Charge I, sexual abuse of a child, is set aside and that charge and its specification are DISMISSED. The finding as to the Specification of Charge II, indecent exposure, is AFFIRMED. The sentence is set aside. In accordance with R.C.M. 810, a sentence rehearing is authorized. All rights, privileges, and property of which appellant has been deprived by virtue of that portion of the findings and sentence set aside by our decision, are ordered restored. *See* UCMJ arts. 58b(c) and 75(a).

Senior Judge HAIGHT and Judge PENLAND concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court