*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
KISOR, GANNON, and HARRELL
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Logan P. DILLENBURGER**
Navy Diver First Class (E-6)
U.S. Navy
*Appellant*

**No. 202300172**

_____

Decided: 27 March 2025

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Frank Hutchison (arraignment)
Matthew C. Cox (motions and trial)

Sentence adjudged 19 April 2023 by a special court-martial tried at Naval Station Norfolk, Virginia, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to paygrade E-5.

For Appellant:
*Lieutenant Commander Leah Fontenot, JAGC, USN (on brief and argued)*

For Appellee:
*Commander John T. Cole, JAGC, USN* (*on brief*)
*Lieutenant Colonel Candace G. White, USMC* (*on brief and argued*)
*Lieutenant Commander James P. Wu Zhu, JAGC, USN* (*on brief*)

Senior Judge KISOR delivered the opinion of the Court, in which Judge GANNON and Judge HARRELL joined.

———————————

**PUBLISHED OPINION OF THE COURT**

———————————

KISOR, Senior Judge:

Appellant was convicted, contrary to his pleas, of two specifications of wrongful use of a controlled substance, in violation of Article 112a, Uniform Code of Military Justice (UCMJ).[1]

Appellant asserts five assignments of error (AOE):

I.     WHETHER THE EVIDENCE IS LEGALLY AND FACTUALLY SUFFICIENT TO SUSTAIN A CONVICTION FOR WRONGFUL USE OF A CONTROLLED SUBSTANCE UNDER ARTICLE 112(a), UCMJ.

II.     WHETHER USE OF THE PERMISSIVE INFERENCE AT THIS MANDATORY JUDGE-ALONE SPECIAL COURT-MARTIAL VIOLATED APPELLANT'S FIFTH AMENDMENT RIGHT TO DUE PROCESS.

III.     WHETHER REFERRAL TO A MANDATORY JUDGE-ALONE SPECIAL COURT-MARTIAL OF CHARGED OFFENSES CARRYING A MAXIMUM AUTHORIZED PUNISHMENT INCLUDING FIVE YEARS' CONFINEMENT AND A DISHONORABLE DISCHARGE VIOLATED APPELLANT'S FIFTH AMENDMENT RIGHT TO DUE PROCESS.

IV.     WHETHER THE MILITARY JUDGE CREATED AN AMBIGUOUS VERDICT WHERE HIS ANNOUNCED FINDINGS ACQUITTED APPELLANT OF CONDUCT THAT HIS SPECIAL FINDINGS PURPORTED TO FIND HIM GUILTY OF.

---

[1] 10 U.S.C. § 912a.

V.   IN LIGHT OF *SMITH V. ARIZONA*, DID THE GOVERNMENT VI-
OLATE THE SIXTH AMENDMENT CONFRONTATION CLAUSE
WHEN IT PRESENTED TESTIMONY BY A SUBSTITUTE EX-
PERT WITNESS WHO WAS NOT INVOLVED IN ANY OF THE
FORENSIC TESTING AT ISSUE, YET CONVEYED OUT-OF-
COURT-STATEMENTS FROM THE OTHER LAB ANALYSTS
WHO WERE?

We find no prejudicial error and affirm the findings and sentence.

## I. BACKGROUND

Appellant, a Navy Diver with 12 years of service, was stationed in
Stuttgart, Federal Republic of Germany, in April of 2022. He began a friend-
ship with a German nurse, Ms. C.E., which evolved to into a romantic relation-
ship over the next several months. By the end of the summer, Appellant was
staying overnight at her apartment several times per week.

On 21 August 2022, Appellant participated in a routine urinalysis. His
sample tested positive for a low level of a cocaine metabolite; as a result, he
was ordered to return to the United States. The day after he arrived in the
United States, 19 September 2022, he participated in another routine urinaly-
sis, and again tested positive for a low level of a cocaine metabolite.

Appellant was charged with two specifications of wrongful use of cocaine.
His case was referred to, and tried by, a special court-martial composed of a
military judge alone.[2]

At trial, the Government presented the testimony of Ms. R. Flowers, a cer-
tifying official and senior chemist at the Navy Drug Screening Laboratory.
Without objection, she was recognized by the court-martial as an expert in the
field of forensic urinalysis. She testified that in her expert opinion the cocaine
metabolite was present in both samples of Appellant's urine. She also authen-
ticated the Navy Drug Screening Laboratory reports (Prosecution Exhibits 5
and 6) as business records, which were admitted without objection. She testi-
fied on direct examination that the Navy drug tests cannot indicate whether
any drug use is knowing or unknowing. She further testified that the levels of
cocaine metabolite (186 and 169 nanograms per milliliter, respectively, of ben-
zoylecgonine) in Appellant's urine samples were low, and the tests could not
indicate whether Appellant would have felt any effects from cocaine. She also

---

[2] *See* Article 16(c)(2)(a), UCMJ, 10 U.S.C. 816(c)(2)(a).

testified that the nanogram levels in the two positive urinalysis samples, taken 19 days apart, were not consistent with a single use, as cocaine can only be detected in urine for up to 4 days after the last exposure. Ms. Flowers testified that she was not "directly involved" in the testing of Appellant's samples, but she had "reviewed all of the testing data."[3]

On cross-examination, Ms. Flowers testified that she has seen samples that contained as high as 1.2 million nanograms per milliliter. She could not make any inference as to whether Appellant's ingestion of cocaine had been innocent or wrongful. Nor could she opine on the method of ingestion.

In its case-in-chief, the Defense called Ms. C.E., who testified by remote means from Germany. During the COVID-19 pandemic, she worked long hours as a nurse in a hospital. She testified that she (like many of the other nurses at her hospital) began mixing cocaine in her coffee, in order to cope with the stress of the job. She testified that she mixed cocaine in with sugar in a sugar bowl that she kept in her apartment, and would mix that in with her coffee on occasion at home. She had left that position at the hospital prior to meeting Appellant, but she testified that she had forgotten that there was cocaine in that sugar bowl, and did not dispose of it when she changed jobs. (She testified that she had another sugar bowl with just sugar as well, adjacent to it). She testified that Appellant would make coffee in her espresso machine in her apartment. Although she never saw him put the sugar in the coffee, she believed that he must have used the sugar from the bowl with the cocaine mixture. She testified that she never told Appellant about cocaine being mixed in the sugar. After she learned about Appellant' positive urinalysis, she told Appellant's sister that she had intentionally put cocaine in Appellant's coffee. She testified during her cross-examination that the statement to the sister was not true; that the point she was making to the sister by telling this early version of the story was that Appellant could not have known that there was cocaine in the sugar that was in his coffee at her apartment.

Appellant testified that he stayed over at Ms. C.E.'s apartment and that he drank coffee that he made with sugar from the bowl that was near the coffee maker. He testified that he did not know there was cocaine in the sugar and that Ms. C.E. had not told him that there was (prior to his leaving Germany). He testified that the coffee did not taste unusual, and that he did not feel different after drinking it. He stayed at her apartment the night before he flew to

---

[3] R. at 204.

the United States and drank coffee the morning he left. He testified that he never knowingly used cocaine.

## II. DISCUSSION

## A. Legal and factual sufficiency

*1. Legal sufficiency*

### a. Standard of review

To determine legal sufficiency, we ask whether, "considering the evidence in the light most favorable to the prosecution, a reasonable fact-finder could have found all the essential elements beyond a reasonable doubt."[4] We review questions of legal sufficiency de novo.[5] In conducting this analysis, we must "draw every reasonable inference from the evidence of record in favor of the prosecution."[6]

### b. The findings are legally sufficient.

In order to prove Appellant guilty of each specification under the Charge, the Government had to prove beyond a reasonable doubt that on or about 31 August and 19 September 2022: (1) Appellant used cocaine; and (2) Appellant's use was wrongful.[7] The Manual for Courts-Martial explains that to be wrongful, the use must be without legal justification or authorization.[8] More specifically, possession or use "without knowledge of the contraband nature of the substance" is not wrongful. With respect to mens rea, the Manual provides a relevant example: "a person who possesses cocaine, but actually believes it to

---

[4] *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also United States v. Gutierrez*, 73 M.J. 172, 175 (C.A.A.F. 2014) (citation omitted).

[5] Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1); *see also United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted).

[6] *United States v. Gutierrez*, 74 M.J. 61, 65 (C.A.A.F. 2015) (quoting *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001)).

[7] 10 U.S.C. § 912a, *see also Manual for Courts-Martial, United States* (2019 ed.) [*MCM*], pt. IV, para. 50.b.(2) at IV-66.

[8] *MCM*, pt. IV, para. 50.c.(5).

be sugar, is not guilty of wrongful possession of cocaine."[9] This example, of course, captures the "innocent ingestion" defense, which the military judge explicitly rejected in this case.[10] Considering the evidence presented at trial in the light most favorable to the prosecution, a reasonable factfinder could have found both elements beyond a reasonable doubt. The evidence is therefore legally sufficient.

*2. Factual sufficiency*

a. <u>Standard of review</u>

Regarding factual sufficiency, Congress has amended Article 66, UCMJ, which now states:

(d) Duties.

(1) Cases appealed by accused.—

(A) IN GENERAL.—In any case before the Court of Criminal Appeals under subsection (b), the Court may act only with respect to the findings and sentence as entered into the record under section 860c of this title (article 60c). The Court may affirm only such findings of guilty as the Court finds correct in law and in fact, in accordance with subparagraph (B).

(B) FACTUAL SUFFICIENCY REVIEW.—

(i) In an appeal of a finding of guilty under subsection (b), the Court may consider whether the finding is correct in fact upon request of the accused if the accused makes a specific showing of a deficiency in proof.

(ii) After an accused has made such a showing, the Court may weigh the evidence and determine controverted questions of fact subject to—

(I) appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence; and

---

[9] *MCM*, pt. IV, para. 50.b.5.

[10] *See* App. Ex. XIVa.

> (II) appropriate deference to findings of fact entered into the record by the military judge.

> (iii) If, as a result of the review conducted under clause (ii), the Court is clearly convinced that the finding of guilty was against the weight of the evidence, the Court may dismiss, set aside, or modify the finding, or affirm a lesser finding.

In *United States v. Harvey*, the United States Court of Appeals for the Armed Forces (CAAF) agreed with this Court that, unless both triggering conditions (assertion of the error and a specific showing of a deficiency in proof) are met by an appellant, the amended statute does not require, or even allow, this Court to review the factual sufficiency of the evidence.[11]

### b. The findings are factually sufficient.

In this case, Appellant has requested that we review for factual sufficiency arguing that there was a deficiency of proof in the wrongfulness element, inasmuch as Appellant lacked knowledge that he was ingesting cocaine. Appellant presented evidence, in the form of testimony from Ms. C.E., that she mixed some amount of cocaine in with her sugar that she and Appellant would drink coffee at her apartment. She testified that she never told Appellant about the presence of cocaine in the sugar.[12] Appellant testified that he never knowingly ingested cocaine, but did put sugar in his coffee.[13] Appellant further presented witnesses to testify as to his truthful character.[14] The Government, for its part, contends that "Appellant makes no specific showing of a deficiency in proof."[15] We hold that, taken together, Appellant has raised factual sufficiency as an issue and made a specific showing of a deficiency in proof.

However, we are not clearly convinced that the findings of guilty are against the weight of the evidence. We afford a high level of deference to the fact that the military judge saw and heard the witnesses and was able to assess

---

[11] *United States v. Harvey*, 85 M.J. 127, 130 (C.A.A.F. 2024).

[12] R at 241.

[13] R. at 320.

[14] R. at 324, 326

[15] Government's Brief at 19.

their credibility. We also give appropriate deference to the findings of fact entered into the record by the military judge.[16]

The military judge specifically found that, although Appellant testified that he never knowingly used cocaine, Appellant was not credible on this point.[17] He found Appellant's testimony to be "fanciful" and noted that his version of events constituting innocent ingestion were "implausible."[18] He likewise found that Ms. C.E. "had a bias for the accused" and was "not credible."[19] This was because her version of events was undercut, in part, by the military judge's basic extrapolation calculating the amount of sugar Appellant would likely have consumed over the course of the relationship in contrast with the size of the sugar bowl as described in the testimony.[20] Further, the military judge discounted Ms. C.E.'s testimony because her story had evolved. She testified at trial that she had lied when she first told Appellant's sister that she intentionally drugged Appellant, then stated that she did not.[21]

We are not clearly convinced that the findings of guilty are against the weight of the evidence. They are, therefore, factually sufficient.

## B. The forum of a special court-martial composed of a military judge alone does not convert the permissive inference into a due process violation.

Appellant argues, somewhat counterintuitively, that the constitutional effect of the permissive inference increases in magnitude when a case is referred to a judge alone forum. In Appellant's view, military judges will reflexively convict in urinalysis cases: "[i]f this verdict is allowed to stand, it is difficult to imagine how a person who innocently (and unknowingly) ingests a controlled substance could ever be found not guilty when sent to trial by a military judge alone."[22] To be sure, it is clear that the Government forcefully argued in closing

---

[16] App. Ex. XIVa.

[17] App. Ex. XIVa at 3.

[18] App. Ex. XIVa at 3.

[19] App. Ex. XIVa at 3.

[20] App. Ex. XIVa at 3.

[21] R. at 244, 258.

[22] Appellant's Br. at 31.

and rebuttal arguments in this case that the military judge should rely on the permissive inference.[23]

Appellant correctly points out that the Manual for Courts-Martial provides that "use . . . of a controlled substance may be inferred to be wrongful in the absence of evidence to the contrary."[24] In this case, Appellant also correctly points out that there is evidence to the contrary: (1) testimony from both Appellant and Ms. C.E. raising the innocent ingestion defense; and (2) the Government's expert's concessions in her testimony that the cocaine metabolite nanogram level was low, and that the test could not reveal whether Appellant would have felt any physical effects of cocaine ingestion.

The problem with Appellant's argument is that it is foreclosed by *United States v. Ford*, which remains valid. As the Government points out, *Ford* stands for the proposition that the permissive inference may be drawn where the defense-presented "evidence to the contrary" may be reasonably disbelieved by the factfinder.[25] Appellant argues that, notwithstanding *Ford*, the creation of the forum of a mandatory judge alone special court-martial operates to transform Article 112a into an absolute liability offense.[26] Implicit in Appellant's argument is that military judges are less capable than members of fairly weighing evidence in a urinalysis case, applying a "beyond a reasonable doubt" standard, and properly placing that burden on the Government.[27] We reject these overbroad and unsupportable contentions as generally impugning military judges' competence, and we find no due process violation here. The applicability of a permissive inference does not vary with forum.

---

[23] R. at 338, 353.

[24] Appellant's Br. at 16; *MCM*, Part IV, para. 50.b.5.

[25] *United States v. Ford*, 23 M.J. 331, 334 (C.M.A. 1987).

[26] Appellant's Br. at 29.

[27] Appellant's Br. at 24–32.

### C. The forum of a judge alone special-court martial is constitutional.

Appellant argues that referral of this case to the forum of a judge alone special court-martial constitutes a due process violation.[28] The CAAF has already resolved this issue in *United States v. Wheeler.*[29]

### D. The verdict is not ambiguous.

Appellant argues the fact that the military judge found Appellant guilty of a wrongful use of cocaine by exceptions and substitutions as to location (excepting "at or near Norfolk, Virginia," and substituting "Stuttgart, Germany,") and then, by his subsequent special finding, created an ambiguity in the verdict.[30] However, the CAAF has clearly stated that, in the context of a judge-alone trial, clarification of an ambiguity can be accomplished by a clear statement on the record by the military judge.[31] In this case, the military judge did just that, explaining in his special findings that it was clear to him that the Defense was on notice to defend against use, both of which occurred in Germany, and did just that.[32] Moreover, in closing argument on findings, trial defense counsel argued, "[w]hat does make sense is that his unknowing exposure to cocaine occurred in Ms. C.E.'s apartment on Sunday morning after ND1 Dillenburger spent his last night in Germany with her, and when he had a cup of coffee boarding his flight home."[33] Accordingly, this assignment of error has no merit.[34]

---

[28] Appellant's Br. at 34. Because Appellant is arguing for an eventual change in the law, and has cited to the adverse controlling authority, it is perfectly proper for Appellant to raise this issue on appeal. *See* Dep't of Navy, Judge Advocate General Instr. 5803.1E, *Professional Conduct of Attorneys Practicing Under the Cognizance and Supervision of the Judge Advocate General,* Rules 3.1 and 3.3(2) (Jan. 20, 2015).

[29] *United States v. Wheeler,* 85 M.J. 70, 72 (C.A.A.F. 2024). Article 112a offenses are specifically permitted at this forum. *See* Rule for Courts-Martial 201(f)(2)(E)(i)(I).

[30] Appellant's Br. at 36–43.

[31] *United States v. Wilson,* 67 M.J. 423, 428 (C.A.A.F. 2009) (citation omitted).

[32] App. Ex. XIVa at 4. The location "Norfolk, Virginia" is an obvious scrivener's error given that the exceptions and substitutions were announced in open court. R. at 358.

[33] R. at 347.

[34] *See United States v. Matias,* 25 M.J. 356 (C.M.A. 1987).

**E. There is no Confrontation Clause error in this case.**

### 1. *Standards of review and law*

Waiver is an intentional relinquishment or abandonment of a known right.[35] Whether an accused has waived an issue is a question of law.[36] It is axiomatic that this Court reviews questions of law de novo.[37] Forfeiture is the failure to make a timely assertion of a right. This Court will not review waived issues, because, as the CAAF has stated, a valid "waiver leaves no issue to correct on appeal."[38] In contrast, this Court may review forfeited issues under a plain error standard.[39] Plain error is an error that is clear or obvious and results in material prejudice to a substantial right.[40] Without question, the Confrontation Clause implicates a substantial right,[41] and where plain and obvious error implicates a constitutional right, the Government must prove that the error was harmless beyond a reasonable doubt.[42] In a urinalysis case, stamps, signatures, and other notations on the chain of custody documents and data review sheets, and results report summaries, are not plainly and obviously testimonial in the context of review for plain error.[43]

An appellant gets the benefit of a change to the law that occurs between his trial and the time of his appeal.[44]

---

[35] *United States v. Ahern*, 76 M.J 194, 197 (C.A.A.F. 2017) (citing *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009)).

[36] *Id.*

[37] *United States v. Haynes*, 79 M.J. 17, 19 (C.A.A.F. 2019).

[38] *Id.* at 20 (internal quotation and citation omitted).

[39] *United States v. Harcrow*, 66 M.J. 154, 155–56 (C.A.A.F. 2008).

[40] *See United States v. McPherson*, 81, M.J. 372, 377 (C.A.A.F. 2021).

[41] It is axiomatic that if evidence is testimonial in a criminal case, it must be subject to cross-examination and failure to do so would violate the Confrontation Clause of the Sixth Amendment.

[42] *See Harcrow*, 66 M.J. at 160.

[43] *United States v. Sweeney*, 70 M.J. 296, 305 (C.A.A.F. 2011).

[44] *Unites States v. Tovarchaves*, 78 M.J. 458, 462 (C.A.A.F. 2019) (citing *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987)); *United States v. Mullins*, 69 M.J. 113, 116–17 (C.A.A.F. 2010)).

### 2. *Smith v. Arizona*

This court-martial occurred in April 2023, and in June 2024 the United States Supreme Court decided *Smith v. Arizona*.[45] In *Smith*, the Supreme Court held that "[a] state may not introduce the testimonial out-of-court statements of a forensic analyst at trial, unless she is unavailable and the defendant has had a prior chance to cross-examine her."[46] That is, of course, generally consistent with Military Rule of Evidence 804(b)(1). The Supreme Court also held:

> Neither may the state introduce those statements through a surrogate analyst who did not participate in their creation. And nothing changes if the surrogate . . . presents the out-of-court statements as the basis for his expert opinion. Those statements, as we have explained, come into evidence for their truth – because only if true can they provide a reason to credit the substitute expert. So a defendant has the right to cross-examine the person who made them.[47]

### 3. *Analysis*

During her direct examination, Ms. Flowers authenticated, as business records, the two laboratory reports regarding urinalysis results that included Appellant's positive results for cocaine.[48] They were offered into evidence as Prosecution Exhibits 5 and 6, respectively, without Defense objection.[49] The Defense contends that Ms. Flowers' expert *testimony* violated the Confrontation

---

[45] 602 U.S. 779 (2024).

[46] *Id.* at 802–03.

[47] *Id.* at 803. Two years before *Smith* was decided, the Army Court of Criminal Appeals decided *United States v. McGee*, an unpublished case, holding essentially the same thing. No. ARMY 20190844, 2022 CCA LEXIS 160, *8–11 (Army Ct. Crim. App. Mar. 17, 2022) (unpublished).

[48] R. at 188, 196. We observe that both Prosecution Exhibits 5 and 6 were accompanied by attesting certificates which satisfied Mil. R. Evid, 803(6)(D) and Mil. R. Evid. 902(11) making the testimony authenticating the document duplicative. There was no objection made at trial regarding the Confrontation Clause or any discussion of whether the documents contained testimonial hearsay.

[49] R. at 198, 197.

Clause in light of the Supreme Court's subsequent decision in *Smith v. Arizona.*[50] More specifically, the crux of the Defense argument is that Ms. Flowers "conveyed testimonial hearsay in this case when she testified that Appellant's samples tested positive at the levels of 169 nanograms per milliliter on the first test, and at 186 nanograms per milliliter of the second test."[51] The Government, for its part, generally contends that the Defense waived this issue by not objecting at trial, and in any event, Ms. Flowers' expert testimony did not violate the Confrontation Clause because she did not rely on testimonial hearsay in forming her expert opinion.[52]

We begin by observing that, although *Crawford v. Washington*[53] was decided by the Supreme Court in 2004 and *United States v. Tearman*[54] by the CAAF in 2013, there was no objection made by defense counsel to either drug lab report at trial.[55] Accordingly, Appellant has waived any issue regarding any *Crawford* violation of the Confrontation Clause for any testimonial hearsay contained in either of those two documents. Notably, Appellant states "it is of no significance whether any testimonial hearsay is contained in prosecution Exhibit 5 and Prosecution Exhibit 6."[56]

Turning to whether Ms. Flowers' *testimony* violated the Confrontation Clause under *Smith v. Arizona,* we conclude that this issue is not waived be-

---

[50] *See generally* Appellant's Mot. for Leave to File and Supp. Br. and AOE. This Court granted the motion and the Government filed a Supplemental Answer on 1 November 2024.

[51] Appellant's Mot. for Leave to File and Supp. Br. and AOE at 14 (citing R. at 204). When asked during oral argument to specifically identify in the record where Ms. Flowers conveyed testimonial hearsay in violation of *Smith*, Appellant's counsel pointed only to this opinion she offered near the conclusion of her direct examination.

[52] *See generally* Government Supp. Answer at 19.

[53] 541 U.S. 36 (2004).

[54] 72 M.J. 54 (C.A.A.F. 2013).

[55] R. at 189, 197. Defense counsel explicitly responded "No objection, Your Honor" when directly asked by the military judge whether there was any objection to Prosecution Exhibits 5 and 6.

[56] Appellant's Reply Br. on Supp. AOE, at 6.

cause *Smith v. Arizona* had not yet been decided. Thus, defense counsel's failure to object at trial is more appropriately treated as forfeiture, which requires further analysis under the plain error standard.[57]

The Government points out (and Appellant apparently concedes) that there is no cover memorandum certifying the results of the tests.[58] Appellant argues, however, "if Ms. [Flowers] reviewed a cover memoranda that contained information about the type of confirmatory testing performed and the results – regardless of whether it was admitted as a prosecution exhibit, her reliance on it would violate the Confrontation [C]lause."[59] We observe that the facts of this case make it distinguishable from *Smith v. Arizona.* In that case, the substitute expert (forensic scientist Greggory Longoni) testified that he came to his conclusion based on Analyst Elizabeth Rast's records.[60] Particularly, Mr. Longoni prepared for trial by reviewing Rast's report and notes. During his testimony "he referred to those materials and related what was in them, item by item by item."[61] The Supreme Court did not vacate Smith's conviction though. Rather, the Supreme Court remanded the case for further proceedings to address whether Rast's records were testimonial, and whether that issue was forfeited.

In contrast to Mr. Longoni's testimony about Ms. Rast's reports, in this case, Ms. Flowers simply testified that she "reviewed all of the testing data" which include the non-hearsay machine generated charts and graphs in Prosecution Exhibits 5 and 6.[62] We will not speculate further on this point because there is no indication in the record that she reviewed any cover memoranda or anything else.[63] Accordingly, we cannot conclude that there was any error,

---

[57] *See Harcrow*, 66 M.J. at 158.

[58] Government's Supp. Answer at 18.

[59] Appellant's Supp. Reply at 5.

[60] *Smith*, 602 U.S. at 790.

[61] *Id.*

[62] R. at 204.

[63] *See generally United States v. Blazier*, 69 M.J. 218 (C.A.A.F. 2010) (holding that cover memoranda prepared for use in litigation containing the drug results and cutoff level are hearsay, and testimony about it is testimonial hearsay). In this case, trial defense counsel never explored the foundation for Ms. Flowers' testimony nor objected to her testimony on foundational (or any) grounds. Further, absent from the

plain or otherwise, based on *Smith v. Arizona* when Ms. Flowers testified without objection, "*[A]fter review of all of the testing data*, my opinion is the cocaine metabolite, benzoylecgonine, was present" at certain levels in Appellant's urine specimens.[64]

To the extent that any other unspecified portion of Ms. Flowers' testimony conveyed testimonial hearsay, any such error did not materially prejudice a substantial right and it was harmless beyond a reasonable doubt.[65] In the context of erroneous admission of testimonial hearsay, this Court focuses on whether there is a reasonable possibility that the evidence might have contributed to the conviction.[66] Put differently, to conclude that a Confrontation Clause error was harmless beyond a reasonable doubt, this Court must be convinced that the testimonial hearsay was unimportant in light of the other evidence.[67] The CAAF has adopted a balancing test to resolve this question, and the non-exhaustive list of factors are: (1) the importance of the unconfronted testimony in the prosecution's case; (2) whether the evidence was cumulative; (3) the existence of corroborating evidence; (4) the extent of confrontation permitted; and (5) the strength of the prosecution's case.[68] We consider the "entire record" which includes evidence presented by the Defense.[69]

The admission into evidence of Prosecution Exhibits 5 and 6 without objection tips the balance of these factors heavily in favor of the Government here. Even assuming, *arguendo,* that trial counsel's question to Ms. Flowers that "at any point, did any of the quality controls fail to meet the standard" called for a testimonial hearsay answer, Ms. Flowers' actual answer was, "[t]here were not

---

Defense cross-examination is the standard series of questions including: (1) What did you do to prepare for your testimony today? And (2) What documents did you review?

[64] R. at 204 (emphasis added).

[65] We review this question de novo. *United States v. Savala*, 70 M.J. 70 (C.A.A.F. 2011) (citations omitted). Stamps, signatures, and other notations on the chain of custody documents and data review sheets, and results reports summaries, are not plainly and obviously testimonial in the context of review for plain error. *See Sweeney,* 70 M.J. at 305.

[66] *See United States v. Tearman*, 72 M.J. 54, 62 (C.A.A.F. 2013) (citations omitted).

[67] *Id*.

[68] *Id.*

[69] *Id.*

discrepancies noted for either test, the screening or the confirmation test, with any of the controlled samples."[70] While somewhat nonresponsive to the question, there was no objection. Likewise the cross-examination did not explore this point.[71]

Accordingly, even if some portion of Ms. Flowers' testimony was unconfronted testimonial hearsay, the Government has met its burden to show that it was harmless beyond a reasonable doubt.[72] In light of the entire record, including admission of the drug lab reports, the prosecution's case is shown to be strong. Assuming arguendo that error occurred, we find any error here to be harmless beyond a reasonable doubt.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, as well as the excellent oral arguments of counsel on 11 February 2025, we have determined that the findings and sentence are correct in law and fact, and no prejudicial error has occurred.[73]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[70] R. at 193.

[71] R. at 206–218.

[72] *See Harcrow*, 66 M.J. at 160 (holding that the Government met its burden to prove harmless beyond a reasonable doubt while stating that "Harcrow has not demonstrated what, if anything, he would have done at trial if he had been given the opportunity to confront laboratory personnel about their reports.").

[73] Articles 59 & 66, UCMJ.